[Cite as *Staffrey v. Smith*, 2010-Ohio-1296.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| KRISTEN STAFFREY, | ) | |
| | ) | |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| VS. | ) | CASE NO. 09-MA-107 |
| | ) | |
| DAVID SMITH, | ) | OPINION |
| | ) | |
| DEFENDANT-APPELLEE. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Court of Common Pleas, Juvenile Division, of Mahoning County, Ohio
Case No. 05JI221

JUDGMENT:     Reversed and Remanded

APPEARANCES:
For Plaintiff-Appellant     Attorney Brent English
M.K. Ferguson Plaza, Suite 470
1500 West Third St.
Cleveland, Ohio 44113-1422

For Defendant-Appellee     Attorney Matthew Giannini
1040 South Commons Place, Suite 200
Youngstown, Ohio 44514

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: March 25, 2010

DONOFRIO, J.

{¶1} Plaintiff-appellant, Kristen Staffrey, appeals from a Mahoning County Common Pleas Court, Juvenile Division decision modifying the child support order for the child she shares with defendant-appellee, David Smith.

{¶2} The parties' daughter was born on July 8, 2002. The parties were never married. Pursuant to an agreed judgment entry, a shared parenting plan was put into effect in September 2005, which included a child support order for appellee.

{¶3} On February 15, 2007, appellee filed a motion to modify the shared parenting agreement and to recalculate child support. At some point, appellant also filed a motion to modify child support. The court sent the matter to mediation where the parties reached a partial agreement.

{¶4} The matter then proceeded to a hearing before a magistrate. Subsequently, the magistrate modified the shared parenting agreement as was agreed to by the parties. He noted that as to the modification of support, he was yet awaiting the parties' financial information. So he set the matter for another hearing solely on the issue of support modification.

{¶5} The magistrate held another hearing on October 15, 2008. The magistrate found that the parties had stipulated to certain financial information for purposes of the child support worksheet. He found that appellant is voluntarily underemployed. Therefore, he imputed annual income of $14,560 to appellant. He found that appellee has a total annual income of $43,126. The magistrate gave consideration to three deductions for appellee: (1) yearly union dues of $156; (2) local taxes of $1,342; and (3) medical insurance for the child of $648 annually. Given these findings, the magistrate completed a child support worksheet and found that appellee was to pay $456.65 per month in child support.

{¶6} Appellant filed objections to the magistrate's decision. Specifically, she asserted that the magistrate (1) incorrectly determined the amount of appellee's annual income from his employment with the Mahoning County Sheriff's Office, (2) incorrectly determined the amount of appellee's additional income, (3) incorrectly determined the amount of the marginal out-of-pocket cost incurred by appellee to insure the child, and (4) incorrectly imputed income to her.

**{¶7}** The trial court held a hearing on appellant's objections. It found that appellee's earnings with the Tamarkin Company, aka Giant Eagle, had been imputed by the magistrate. It noted that the parties disputed the amount of these earnings. Therefore, the trial court subpoenaed and received appellee's W2 forms from Tamarkin. It then used this information in rendering its decision. The court further found that the magistrate's decision was clear that the income imputed to appellant was an amount stipulated to by the parties. Additionally, it found that based on the magistrate's findings of fact, appellant was voluntarily underemployed and the magistrate properly imputed minimum wage income to her. The court then used the child support worksheet and found that appellee's child support obligation was $395.94 per month.

**{¶8}** Appellant next filed a "targeted" request for findings of fact and conclusions of law on three points. In response, the trial court issued a judgment entry addressing these three points.

**{¶9}** First, it stated that it used $28,918.44 as appellee's income on line 1(A) of the child support worksheet because it issued subpoenas to appellee's employers and attached copies of the responses to its judgment entry. The court then calculated appellee's income based on the responses and reached a total of $28,918.44. Second, the court stated that it took judicial notice of the out-of-pocket cost for health insurance to cover the child because appellee's insurance provider is the same provider for the court. The court calculated the insurance cost to be $648. Third, the court stated that it determined appellant was voluntarily underemployed based on the stipulated facts outlined in the magistrate's decision and also noted that appellant was only employed during the summer. It stated that case law does not exist to support the credit of taxes on imputed income for child support determination. It went on to note, however, that even if it did assess taxes, the taxes would be only $400.40. The court noted that such a tax credit would not have a significant impact on child support. Finally, the court modified appellee's monthly child support obligation to $399.78.

**{¶10}** Appellant filed a timely notice of appeal on June 11, 2009.

{¶11} Appellant raises four assignments of error, the first of which states:

{¶12} "THE TRIAL COURT ERRED IN COMPUTING APPELLEE'S CHILD SUPPORT OBLIGATION BECAUSE IT DID NOT USE HIS ACTUAL GROSS INCOME."

{¶13} Appellant argues that the trial court did not calculate appellee's income correctly. She asserts that appellee's total income is $35,518.47. She reaches this figure by adding: (1) $30,605.86 from the Mahoning County Sheriff's Office as reported on appellee's 2008 W2; (2) $4,357.61 from the City of Campbell as reported on appellee's 2008 W2; and (3) $555 from the Tamarkin Company as reported on appellee's 2008 W2.

{¶14} Based on the alleged miscalculation, appellant asks that we remand this matter so that the trial court can correct appellee's income and recalculate child support based on an income of $35,518.47.

{¶15} In reviewing matters concerning child support, appellate courts look at whether the trial court abused its discretion. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144. Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

{¶16} Appellee's W-2s, which the trial court relied on, are in the record. They reflect the following for his 2008 wages.

{¶17} From his employment at the Tamarkin Company, appellee earned $555. From his employment with the City of Campbell, appellee earned $4,357.61. On both of these W-2s, appellee's "Wages, tips, other compensation" located in Box 1 are identical to his "Medicare wages and tips" located in Box 5. There is no dispute surrounding these wages.

{¶18} From appellee's employment with the Mahoning County Sheriff's Office, his wages as listed in Box 1 are $26,635.49. His wages as listed in Box 5 are $30,605.86. This is where the confusion arises. Appellant claims appellee's income from Mahoning County is $30,605.86, the figure listed in Box 5 as "Medicare wages and tips." The trial court however, apparently used $26,635.49 as appellee's income,

which is the figure listed in Box 1 as "Wages, tips, other compensation." To this figure, the trial court apparently added two other items.

**{¶19}** Box 14 on the W-2 is simply titled "Other." Box 14 typically lists nontaxable earned income and includes such things as health insurance premiums and union dues. Appellee's Box 14 includes four items: (1) "Co-Pa" of $1,282.95; (2) "Cloth" of $1,000; (3) "Union" of $468.72; and (4) "PERS" of $1,889.15. The calculations reveal that the trial court added the amounts from "Co-Pa," which is appellee's health care premium, and from "Cloth," presumably appellee's clothing allowance, to his wages as listed in Box 1 in order to calculate his income from Mahoning County. When we add these figures to appellee's income listed in Box 1, we get the trial court's total for annual gross income as listed on the child support worksheet and in its findings of fact ($26,635.49 + $1,282.95 + $1,000 = $28,918.44). It appears then that the trial court did not add the amounts for "Union" and "PERS."

**{¶20}** R.C. 3119.01(C)(5) defines "income" for purposes of calculating a fully employed parent's child support obligation as "the gross income of the parent."

**{¶21}** R.C. 3119.01(C)(7) describes what is and what is not "gross income:"

**{¶22}** "'Gross income' means, except as excluded in division (C)(7) of this section, *the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable*, and includes income from salaries, wages, overtime pay, and bonuses * * *; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; social security benefits, including retirement, disability, and survivor benefits that are not means-tested; workers' compensation benefits; unemployment insurance benefits; disability insurance benefits; benefits that are not means-tested and that are received by and in the possession of the veteran who is the beneficiary for any service-connected disability * * *; spousal support actually received; and all other sources of income. "Gross income" includes income of members of any branch of the United States armed services * * *; self-generated income; and potential cash flow from any source.

**{¶23}** "'Gross income' does not include any of the following:

**{¶24}** "* * *

**{¶25}** "(d) Amounts paid for mandatory deductions from wages such as union dues but not taxes, social security, or retirement in lieu of social security." (Emphasis added.)

**{¶26}** Pursuant to the statutory definition, "gross income" specifically includes all earned and unearned income from all sources *whether or not the income is taxable.*

**{¶27}** "[T]he purposes underlying the Internal Revenue Code and the child support guidelines are vastly different. The tax code permits or denies deduction from gross income based on myriad economic and social policy concerns which have no bearing on child support. The child support guidelines in contrast are concerned solely with determining how much money is actually available for child support purposes. To this end, R.C. 3113.215(A)(2) [former support statute] includes nontaxable income in "gross income" for purposes of calculating child support. This recognized the economic reality that all money earned by a parent, irrespective of its taxability, is in fact income to that parent." *Helfrich v. Helfrich* (Sept. 17, 1996), 10th Dist. No. 95APF12-1599.

**{¶28}** When a trial court calculates a parent's income for purposes of determining child support, it must verify the income "with suitable documents, including, but not limited to, paystubs, employer statements, receipts and expense vouchers related to self-generated income, tax returns, and all supporting documentation and schedules for the tax returns." R.C. 3119.05(A). "Although federal and state tax documents provide a proper starting point to calculate a parent's income, they are not the sole factor for the trial court to consider." *Jajola v. Jajola,* 8th Dist. No. 83141, 2004-Ohio-370, at ¶14, citing *Foster v. Foster,* 150 Ohio App.3d 298, 2002-Ohio-6390; *Houts v. Houts* (1995), 99 Ohio App.3d 701, 706.

**{¶29}** In this case, appellee's W2's were the only evidence the trial court had before it of appellee's income. There is no transcript of any other evidence before us. Furthermore, in the magistrate's decision he notes that appellee failed to appear at the pretrial conference where the parties, through counsel, entered a few stipulations.

And the trial court indicated in its May 12, 2009 judgment entry that it calculated appellee's income based on the subpoenaed information from appellee's employers.

**{¶30}** Consequently, in this case the court should have considered appellee's Medicare wages as evidence of his gross income because these wages, although not taxable in their entirety, were earned income.

**{¶31}** Accordingly, appellant's first assignment of error has merit.

**{¶32}** Appellant's second assignment of error states:

**{¶33}** "THE TRIAL COURT ERRED IN COMPUTING APPELLEE'S CHILD SUPPORT OBLIGATION BECAUSE IT MISCALCULATED APPELLEE'S MARGINAL OUT-OF-POCKET COST TO PROVIDE NECESSARY HEALTH INSURANCE FOR THE MINOR CHILD."

**{¶34}** In its judgment entry in response to appellant's targeted request for findings of fact, the trial court stated that it took judicial notice of the out-of-pocket cost for health insurance to cover the child because appellee's insurance provider is the same provider for the court. The court found the yearly cost to be $648.

**{¶35}** Here appellant argues that the trial court incorrectly used its own figure for the marginal out-of-pocket cost to provide healthcare for the child. Appellant states that it subpoenaed the personnel director for the Mahoning County Sheriff's Office to provide the cost of insuring the child who responded that the cost was $49.50 per month, or $594 annually. Appellant contends that the parties stipulated to this figure when counsel appeared at a magistrate's conference on October 15, 2008. She points to her counsel's affidavit filed with the trial court on December 18, 2008. This figure, appellant contends, was never disputed by appellee.

**{¶36}** Appellant argues that the trial court could not take judicial notice of the cost of insuring the child. Firstly, she asserts that this is not the type of fact that a court can take judicial notice of because it does not fit into one of the categories listed in Evid.R. 201(B). Secondly, she asserts that the cost of health insurance was not at issue because the parties had stipulated to this fact. Therefore, appellant argues that the court abused its discretion by taking judicial notice of a fact that contradicted the actual evidence.

{¶37} "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Evid.R. 201(B). A court may take judicial notice of fact whether or not it is requested by a party. Evid.R. 201(C).

{¶38} Clearly, the cost to insure the parties' daughter under appellee's health insurance is not a generally known fact. A judge may not take judicial notice of facts just because the judge has personal knowledge of a fact. And whether it is capable of accurate and ready determination is questionable. The court stated that because appellee's insurer is the same as the court's insurer, the court was able to calculate the cost of appellee's out-of-pocket cost for health insurance for his daughter. Even though the court and appellee may have the same health insurance provider, the terms of their health insurance plans may not be the same. Their costs for dependents may vary based on the plans that each may have. Both the judge and appellee are Mahoning County employees. However, it does not seem that this fact conclusively means that they have the identical health care plans with identical terms and identical costs for insuring dependents.

{¶39} Also, the parties had already stipulated to the out-of-pocket health care cost.

{¶40} In support of her objections, appellant's counsel filed his affidavit in compliance with Civ.R. 53(D)(3)(b)(iii), which provides that objections to a magistrate's decision "shall be supported by a transcript of all the evidence submitted to the magistrate * * * or an affidavit of that evidence if a transcript is not available."

{¶41} In his affidavit, appellant's counsel stated that on October 15, 2008, he and appellee's counsel met with the magistrate and agreed to certain stipulations. (English Aff. ¶¶2, 4). He further averred that this meeting occurred in the magistrate's chambers and was not recorded. (English Aff. ¶8). One of the stipulations agreed to by the parties was that the magistrate could use the records counsel had subpoenaed from appellee's employers. (English Aff. ¶¶5, 6). Counsel attached these records to his affidavit. One of these records set out appellee's out-

of-pocket cost for insuring his daughter. (English Aff. Ex. A). Relying on the figure in this agreed-to exhibit reflects that appellee's out-of-pocket cost for insuring his daughter is $49.50 per month or $594 per year, as stated by appellant. Appellee never rebutted the statements in appellant's counsel's affidavit by way of filing his own affidavit of the evidence.

**{¶42}** Accordingly, appellant's second assignment of error has merit.

**{¶43}** Appellant's third assignment of error states:

**{¶44}** "THE TRIAL COURT ERRED IN COMPUTING APPELLEE'S CHILD SUPPORT OBLIGATION BECAUSE IT ERRED IN FINDING THAT THE PARTIES HAD STIPULATED THAT APPELLANT WAS VOLUNTARILY UN[der]EMPLOYED."

**{¶45}** Appellant argues here that the court mistakenly concluded that the parties stipulated before the magistrate that appellant was underemployed. She asserts that the parties never entered such a stipulation. Appellant further notes that the magistrate did not state a factual basis for his finding that she was underemployed, nor was any evidence presented on this point. Appellant contends that the trial court mistakenly read the magistrate's finding of fact on the issue to mean that the parties stipulated to her underemployment. Appellant argues that, because no evidentiary hearing was held, no evidence that she is underemployed exists on the record, and there is uncontroverted evidence that the parties never entered a stipulation on this issue, the trial court abused it discretion in finding to the contrary.

**{¶46}** Whether a parent is voluntarily underemployed is a matter within the trial court's discretion. *Rock v. Cabral* (1993), 67 Ohio St.3d 108. Thus, we will not reverse a trial court's determination that a parent is voluntarily underemployed unless we find that the court abused its discretion in reaching that decision. Id.

**{¶47}** In his affidavit, appellant's counsel stated that he did not stipulate that appellant is voluntarily underemployed. (English Aff. ¶9). He also stated that he stipulated to appellant's most recent pay stub and tax return. (English Aff. ¶9). These documents revealed that appellant earned $2,134 in 2007 and would earn $1,222 in 2008. (English Aff. ¶9). This is the only evidence in the record regarding

appellant's employment and income. As noted above, there is no transcript of the hearing before the magistrate and appellee did not even appear for the hearing.

**{¶48}** The court states in its April 9, 2009 judgment that even if the parties had not stipulated to appellant's underemployment, the evidence nonetheless demonstrated that she was in fact underemployed:

**{¶49}** "The Court finds that the Magistrate's Decision is clear that the imputed income was an amount stipulated to by the parties. Further, that the [sic.] based upon the Magistrate's Findings of Fact, the mother was voluntarily underemployed and that the Magistrate properly imputed her wages at minimum wage for at [sic.] total of $14,560.00 annually."

**{¶50}** Thus, the court makes clear that regardless of any stipulation, it determined that appellant was underemployed. What the magistrate and the court failed to consider, however, is the burden of proof on this issue.

**{¶51}** When one parent claims that the other parent is voluntarily underemployed, the parent making this claim has the initial burden of proof. *Caldwell v. Caldwell*, 9th Dist. Nos. CA2008-02-019, CA2008-03-021, 2009-Ohio-2201, at ¶53. Once the parent making the voluntary underemployment claim has met this burden, the burden shifts to the underemployed parent to show that he or she is working at his or her potential. *Trenkamp v. Trenkamp* (Dec. 1, 2000), 10th Dist. No. C-000203.

**{¶52}** In this case, appellee never met his initial burden of proof. There is no evidence of record that appellee presented to demonstrate that appellant is voluntarily underemployed. In fact, the only "evidence" of record that we have on this issue is appellant's counsel's affidavit stating that he never stipulated to underemployment. And while appellant's counsel did stipulate to appellant's low income for the previous two years, there is no evidence to suggest that this income necessarily equates to underemployment. Because there was no stipulation and there was no evidence of underemployment, appellee did not meet his burden of proof on this issue.

**{¶53}** Consequently, the trial court's decision to find that appellant was voluntarily underemployed was an abuse of discretion.

**{¶54}** Accordingly, appellant's third assignment of error has merit.

**{¶55}** Given our resolution of appellant's third assignment of error, her fourth assignment of error is moot. It states:

**{¶56}** "ASSUMING THAT THE TRIAL COURT VALIDLY IMPUTED INCOME TO THE APPELLANT DUE TO HER ALLEGED 'VOLUNTARY UNDEREMPLOYMENT,' THE TRIAL COURT ERRED BECAUSE IT FAILED TO GIVE APPELLANT CREDIT FOR LOCAL TAXES SHE WOULD HYPOTHETICALLY HAVE TO PAY ON THE LOCAL INCOME WHICH WAS HYPOTHETICALLY IMPUTED TO HER."

**{¶57}** For the reasons stated above, the trial court's judgment is hereby reversed and the matter is remanded so that the trial court can recalculate appellee's child support obligation pursuant to law and consistent with this court's opinion.

Vukovich, P.J., concurs.
DeGenaro, J., concurs.