[Cite as *Massey v. Lambert*, 2011-Ohio-1341.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF:<br>NICHOLAS MONTGOMERY MASSEY, | ) | CASE NO. 09 CO 29 |
| | ) | |
| GREGORY MASSEY, | ) | |
| | ) | |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| PAMELA MONTGOMERY LAMBERT, | ) | |
| | ) | |
| DEFENDANT-APPELLEE. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Common Pleas
                              Court, Juvenile Division,
                              Case No. P-2007-0153

JUDGMENT:                     Affirmed.

APPEARANCES:
For Plaintiff-Appellant:       Attorney Matthew Oberholtzer
                               116 Cleveland Avenue, NW
                               Courtyard Center, Ste. 650
                               Canton, OH  44702-1727

For Defendant-Appellee:        Attorney Tracey L. Laslo
                               325 E. Main Street
                               Alliance, OH  44601

                               Attorney Shirley Smith
                               1399 E. Western Reserve Rd., Suite 2
                               Poland, OH  44514

JUDGES:
Hon. Mary DeGenaro
Hon. Cheryl L. Waite
Hon. Gene Donofrio

                                            Dated:  March 14, 2011

DeGenaro, J.

{¶1} Plaintiff-Appellant, Gregory Massey, appeals the July 14, 2009 decision of the Columbiana County Court of Common Pleas, Juvenile Division, ordering him to pay child support for his minor child to the child's mother, Defendant-Appellee, Pamela Montgomery Lambert. On appeal, Massey challenges the trial court's determination of his gross income and its resulting child support calculation.

{¶2} The trial court properly used the limited information it had before it to project Massey's annual gross income. Thus, the trial court's income determination was supported by competent, credible evidence and not an abuse of discretion. Accordingly, the judgment of the trial court is affirmed.

## Facts and Procedural History

{¶3} Massey and Lambert were never married, but have one minor child together, Nicholas Montgomery Massey, who was born on April 19, 1999. Since birth, Nicholas had very little contact with his father. On February 27, 2007, Massey filed a complaint in the Columbiana County Juvenile Court to establish paternity and for custody. Prior to Massey's initiation of this custody action, Lambert had filed an action in the Columbiana County Probate Court to change Nicholas' surname. The probate case was eventually transferred to the Juvenile Division and consolidated with the present case. At the time the custody complaint was filed, Massey lived in Alabama and Lambert lived in Columbiana County with Nicholas. The trial court issued temporary parenting-time orders granting Massey some limited visitation with Nicholas in Columbiana County.

{¶4} As the case proceeded, Lambert was continually frustrated by Massey's failure to respond to discovery requests regarding Massey's employment history and income. On February 28, 2008, Lambert filed a motion to compel discovery. On March 5, 2008, the court ordered Massey to immediately produce the requested discovery and to pay all Lambert's costs and attorney fees for filing the motion to compel.

{¶5} On June 16, 2008, Lambert filed a motion to dismiss the custody complaint and a motion to set child support. Lambert alleged that Massey had failed to comply

with the court's March 5 order requiring him to produce all requested discovery and to pay the costs and attorney fees associated with her motion to compel. She further noted that Massey had failed to appear at two scheduled hearings. Lambert requested that the court dismiss Massey's motion for custody and order him to pay $850.00 for attorney fees and $75.00 for filing fees per the court's earlier ruling on the motion to compel. Further, Lambert stated it was her understanding that Massey works for several realty companies in Alabama. She represented she had continually attempted to subpoena Massey's financial information from those companies, beginning in 2007. In February 2008, Lambert finally received a response to a subpoena from one company, RealtySouth, which she attached, indicating Massey earned $39,593.76 from real estate commissions during the first four months of 2007. Lambert requested that the court annualize this income and award child support based on that amount, retroactive to February 28, 2007. Lambert attached a child support worksheet using the annualized amount, from which a $1,221.63 per month support obligation had been calculated.

{¶6} On June 16, 2008, the case came for hearing on the merits of Massey's complaint for allocation of parental rights and responsibilities along with the issue of child support. The court also considered Lambert's motion to dismiss. According to a June 26, 2008 judgment entry memorializing the hearing, the court was advised there was outstanding financial information which made the resolution of child support impossible. Further, the court noted that after extensive discussions, the parties came to an agreement regarding custody, whereby Lambert would have sole legal custody and Massey would get visitation. The details of this arrangement were read into the record. The court ordered Massey to pay temporary child support, during the pendency of the proceedings, of $850.00 per month plus processing fee, effective June 16, 2008. He was also ordered to pay part of the guardian ad litem fees, and a show cause hearing was set in the event Massey failed to comply. Each parent was ordered to submit a financial disclosure affidavit detailing earnings from all sources from tax years 2005-2007, plus 2008 to date, along with evidence of such earnings. Finally the court

set the matter for additional hearing on August 25, 2008 to determine the child support obligations.

{¶7} On August 6, 2008, the trial court approved the agreed judgment entry regarding custody and visitation. Both parties filed financial affidavits. However, Massey's was not notarized and he failed to provide any supporting documentation. Specifically, Massey did not provide copies of any 1099 or W-2 forms.

{¶8} On August 25, 2008, Lambert filed a motion for contempt. She alleged that Massey had failed to comply with the court's March 5, 2008 order to provide discovery and that Massey had failed to pay the $850.00 in attorney fees and $75.00 in court costs as ordered. Further, she alleged Massey had failed to provide tax returns, W-2 forms, 1099 forms or other evidence to support his financial affidavit, in violation of the court's June 26, 2008 order. In addition, Lambert contended that the subpoenas Lambert sent to Massey's prior employers at the addresses provided by Massey had been returned as undeliverable. She attached copies of the envelopes as an exhibit. Finally, she asserted that Massey had failed to remit the temporary support as ordered by the court on June 26, 2008.

{¶9} On August 25, 2008, the court held a hearing on child support. Quite notably, a transcript of this hearing was *not* ordered by Massey for inclusion in the appellate record and he omits any discussion of this hearing in his brief. Ultimately, Lambert had the transcript prepared and supplemented the record on appeal with it.

{¶10} During the hearing, Lambert's counsel reiterated the arguments made in the contempt motion she filed that same day. She noted again that the only information she had received to verify Massey's income was a response from RealtySouth which indicated Massey had earned $39,593.76 in real estate commissions during the first four months of 2007. As she did in her June 16, 2008 motion to set child support, Lambert asked the court to use this information to project Massey's annual gross income at $118,781.00 and to use that amount to calculate his child support obligation, which pursuant to her submitted worksheet would be $1,246.06, including processing fee.

**{¶11}** Massey's counsel insisted that $39,593.76 represented the *total* amount of income Massey made in 2007 and asked the court to use that figure as his gross annual income to calculate child support, which pursuant to his proposed worksheet would amount to $479.94 per month.

**{¶12}** Massey then testified. With regard to his education and employment history, he stated he completed high school and three years of college. In the past, he owned a flooring company and then a home building company called Horizon Custom Homes. He said Horizon went bankrupt in 2001, after which time he began to work as a real estate agent. Since then, he had been affiliated with RealtySouth, Remax, and ERA Oxford. Because the residential real estate market had been declining, Massey began to do more commercial real estate work.

**{¶13}** When confronted with his *own answers* to interrogatories, Massey became confused. While he himself had listed "Houzor Hills" as a business interest, he testified "I don't remember anything about Houzor Hills." He admitted he had been married previously, yet he listed his number of prior marriages as "zero" in his unsworn financial affidavit. He agreed he failed to pay the $850 per month in temporary support per the court's order, explaining that his attorney's secretary had told him he need not pay.

**{¶14}** Massey claimed between January 1, 2008 and July 1, 2008, he earned only $9,600.00. When asked upon what he based that amount, he stated, "um commission checks." When asked if he had any verification of that, Massey replied: "I do, but not with me." Massey also agreed that despite his purportedly low income he had monthly expenses totaling just over $3,000.00 per month. His expenses included, among other things: $800.00 in rent; $300.00-$400.00 in utilities; and $700.00 in credit card payments. He testified he had $4,600.00 in his checking account, a $20,000.00 certificate of deposit, and three motor vehicles.

**{¶15}** When asked how he managed to meet his expenses on such a low income, his only explanation was that he received a $30,000.00 inheritance from his mother three years earlier.

**{¶16}** Massey further testified that his real estate commissions were sporadic and that he had to pay about $250.00 in overhead costs every month regardless of whether he made money. Yet when asked to testify about specific sales and commissions, he was evasive:

**{¶17}** "Q. And could you tell me what your real estate sales were in December of 07?

**{¶18}** "A. December of 07? My real estate sales, no I can't remember.

**{¶19}** "Q. Could you tell me approximately?

**{¶20}** "A. I can't remember.

**{¶21}** "Q. How about November of 07?

**{¶22}** "A. I can't. I don't remember. I just can't tell you. I don't know exactly what it was.

**{¶23}** " * * *

**{¶24}** "Q. Do you recall any sales in those months?

**{¶25}** "A. Not unless I got my paperwork I couldn't tell you.

**{¶26}** "Q. How about any sales in October of 07, can you tell me what your sales were then?

**{¶27}** "A. Uh I am going to tell you again I don't. * * *."

**{¶28}** When pressed further for any information about his sales during 2007, Massey started laughing and said he could not recall without his "paperwork." And then he admitted he personally received a subpoena for earnings information at his current realty company, ERA Oxford, but had declined to act on it or to supply any financial information.

**{¶29}** Massey asked the court to use $39,593.76 as his gross income for child support purposes, as this was listed on his tax return for 2007. Yet he also admitted that he received one commission check for $45,000.00 during 2007. Specifically, he testified: "I made a sale on a piece of property that I did receive a $45,000.00 check on. * * * But I didn't think it was in 08. I know it wasn't in 08 it was 07."

**{¶30}** Finally, Massey testified he had mailed verification of his earnings, namely 1099's and W-2's, to his attorney three or four months earlier, but that counsel must not have received it. However, he admitted he never received a call from his counsel's office notifying him that the documents had not been received. Massey promised to provide all the earnings verification by fax to his attorney as soon as he returned to Alabama. He also promised to pay his temporary child support arrearage.

**{¶31}** Following the hearing, the trial court issued a judgment entry dated September 10, 2008 stating in pertinent part:

**{¶32}** "The Court finds that Gregory Massey has continued in his failure to comply with providing full answers to discovery as originally filed by the defendant. Mr. Massey has also failed to comply with the Court's specific orders of June 26th, 2008, requiring his production of financial documents. When presented with his purported answers to interrogatories by counsel for the defendant, Mr. Massey was confused and unable to even identify the information contained in the answers to which he had previously sworn to their accuracy. *The Court has reason to discount virtually all the testimony of Mr. Massey as unreliable.*"

**{¶33}** The trial court also found Massey in contempt of its prior orders of June 26, 2008 and February 28, 2008. The court ordered Massey to pay Lambert's attorney fees for the contempt proceedings. The court sentenced Massey to thirty days in jail and ordered him to pay court costs. Massey was given the opportunity to purge the contempt by: (1) paying Lambert's counsel $1,000.00 in attorney fees for the contempt action, plus $850.00 in attorney fees as ordered on June 26, 2008, plus $75.00 in costs; (2) providing full, complete and accurate answers to Lambert's interrogatories; (3) producing all financial information as ordered by the court on June 26, 2008; and (4) paying his child support arrearage under the temporary orders of June 26, 2008 in full. The hearing to establish child support orders was continued.

**{¶34}** On September 16, 2008, Massey filed his tax returns from 2005, 2006 and 2007. However, he failed to include any supporting documentation such as W-2 or 1099 forms. The hearing to determine child support was then continued several more times.

**{¶35}** On May 11, 2009, Lambert filed a "motion for commitment," alleging Massey had failed to purge himself of the contempt in accordance with the court's September 10, 2008 order and that he continually failed to abide by the court's prior orders thereby requiring commitment to jail. Specifically, she alleged that Massey failed to provide any current income information or W-2/1099 information, having only provided alleged tax returns for 2005-2007. Also she complained that Massey continued to list invalid addresses for his employers when responding to her discovery requests. She stated that subpoenas had been repeatedly issued in an attempt to gain employment history, all of which were returned undeliverable. Lambert attached as exhibits, inter alia, copies of envelopes sent to the employers at the addresses as provided by Massey, all of which had been returned as undeliverable. Further, Lambert alleged that Massey had failed to pay his temporary child support arrearage. Lambert also requested the court to order Massey to pay the additional attorney fees incurred as a result of Massey's noncompliance with court orders. The same day, Lambert also filed a separate motion for contempt, which essentially made the same allegations.

**{¶36}** On May 11, 2009, the case came for further hearing on the establishment of child support. Massey failed to appear. Lambert's counsel argued that because Massey continued to be evasive about his earnings, and because the court had deemed him not credible, that the court should use the only verified earnings information it had before it; the $39,593.76 in commissions from the first four months of 2007, annualize that amount, and on that basis, order Massey to pay $1,246.06 in monthly child support retroactive to February 2007. She represented that Lambert's financial information had not changed since she filed her financial affidavit pursuant to the court's June 2008 order.

**{¶37}** Massey's counsel then spoke on behalf of his client. He claimed that Massey had failed to appear because he could not afford to travel from Alabama to Ohio for the hearing. He submitted a child support worksheet which used $16,705.02 as Massey's annual gross income, a figure which resulted in a $148.34 per month child support obligation.

**{¶38}** Lambert's counsel took issue with several aspects of Massey's proposed worksheet, and claimed that Massey was severely underreporting his income. Further, counsel stated that from her independent research she determined there were numerous Alabama properties for which Massey was the listed real estate agent. She named several of these properties and their asking prices.

**{¶39}** In a June 12, 2009 judgment entry the court ruled:

**{¶40}** "The Court finds that the obligee continues to be frustrated in obtaining verification of Mr. Massey's wages. Responses to discovery apparently did not include correct addresses for multiple employers. The Court has given Mr. Massey a very substantial opportunity to be forthright and produce verification of his earnings. At prior hearing the Court had reviewed the obligee's projection of annual income for Mr. Massey based upon the limited evidence that was available to verify his earnings. The Court finds that the projections of the obligee are the best evidence before the Court and are appropriate for the Court in determining annual income of the obligee [sic]."

**{¶41}** The court ordered Lambert's counsel to file a proposed child support order based on the income and the calculations in her proposed worksheet. The court sua sponte ordered Massey to appear before the court to show cause as to why the prior jail sentence should not be imposed as well as additional sanctions for his failure to appear at the May 11, 2009 hearing.

**{¶42}** A final judgment entry was filed by the court on July 14, 2009 which ordered Massey to pay $1,246.06 per month plus processing fees, effective February 7, 2007 to Lambert through the Columbiana County CSEA. Attached was a child support computation worksheet which listed Massey's gross income as $118,781.00 and Lambert's as $27,136.00.

**Income Determination**

**{¶43}** All three of Massey's assignments of error challenge the trial court's calculation of his gross income and the resulting child support determination and will be discussed together:

**{¶44}** "The trial court erred in utilizing incorrect income in calculating Appellant's modified child support obligations."

**{¶45}** "The trial court erred as a matter of law, to the prejudice of Appellant, in imputing income to Appellant without first finding he was voluntarily unemployed or underemployed pursuant to R.C. 3119.1 (C) 11 [sic]. The trial court further erred in using this imputed income to calculate child and spousal support [sic] obligations."

**{¶46}** "The trial court [sic] determination of the parties' income for purposes of the child support calculation was against the manifest weight of the evidence."

**{¶47}** Because determination of a parent's child support obligation falls within the discretion of the trial court, that decision "will not be disturbed absent a showing of an abuse of discretion." *Pauly v. Pauly* (1997), 80 Ohio St.3d 386, 390, 686 N.E.2d 1108, citing *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. The term "abuse of discretion" implies more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

**{¶48}** However, "challenges to factual determinations upon which the child support order is based are reviewed using the 'some competent credible evidence' standard. Since a determination of gross income for support purposes is a factual finding, we must review the trial court's decision to determine whether it is supported by competent credible evidence." *Heywood v. Heywood*, 12th Dist. No.,CA2010-02-013, 2010-Ohio-3565, at ¶12, quoting, *Glassman v. Offenberg*, 8th Dist. Nos. 85838, 85863, 87175, 2006-Ohio-3837, at ¶20.

**{¶49}** Further, the trial court must follow the mandatory statutory child-support requirements in all material respects. *Sapinsley v. Sapinsley*, 171 Ohio App.3d 74, 2007-Ohio-1320, 869 N.E.2d 702, at ¶8; see, also, *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 601 N.E.2d 496, paragraph two of the syllabus.

**{¶50}** Massey claims the trial court's determination of his gross income was erroneous for several reasons. First, he argues the trial court's ultimate child support order of $1,246.06 per month was unreasonable because the court had earlier only

ordered $850.00 per month. This argument is flawed since the $850.00 per month was a temporary child support order. Such orders are not final and the court need not find a change in circumstances to modify them:

{¶51} "A temporary order is merely an order to provide for the needs of the parties during the pendency of the [ ] action. The trial court has discretion to order an amount different from the temporary order after final hearing, even without evidence of a change in circumstances. The trial court need not justify a difference between a temporary and a permanent child support award." *Schumann v. Schumann*, 8th Dist. Nos. 83404, 83631, 2005-Ohio-91, at ¶50.

{¶52} Second, Massey contends he was somehow prohibited from introducing evidence of his actual earnings. This argument is disingenuous. Throughout the proceedings, Massey provided inaccurate and incomplete answers to discovery questions regarding his employment history and income. Massey's testimony regarding his earnings at the August 2008 hearing was inconsistent and evasive, to the point where the trial court stated it had reason to "discount virtually all the testimony of Mr. Massey as unreliable." On appeal, Massey not only omitted this testimony from his argument, he did not order a transcript of this hearing to be included in the record of this appeal. Lambert ordered the transcript to supplement the appellate record.

{¶53} Further, Massey failed to appear for the May 2009 hearing, which was a continuation of the August hearing on his child support obligations. Massey now claims he believed the purpose of the May 2009 hearing was merely to "review compliance with previous orders," and not to establish child support. He claims the court denied him the opportunity to present evidence of his earnings since he was unaware of the true purpose of the hearing. This contention is unsupported by the record.

{¶54} In a September 10, 2008 judgment entry the trial court ordered: "Hearing on the Motion to establish financial orders is continued and will come on before the Court on the 3rd day of November, 2008 at 11:30 o'clock a.m." Lambert's counsel filed a motion to continue that hearing which was granted, and the child support hearing was continued to January 26, 2009. Subsequently, Massey's counsel filed a motion to

continue the child support hearing, which was granted and the hearing rescheduled to February 17, 2009. Then, on March 2, 2009, the court issued an entry stating:

**{¶55}** "This matter was scheduled before the Court for February 17th, 2009 for Merit Hearing on Financial Obligation. Due to illness of Judge Baronzzi, it was necessary to continue the hearing as scheduled. IT IS, THEREFORE, the order of the Court that [ ] The Merit Hearing on Financial Obligations originally scheduled for February 17, 2009 is continued and rescheduled and shall come on for Merit Hearing before the Court on Monday May 11, 2009 at 11:30 a.m."

**{¶56}** Both Massey and his counsel were sent notice of this judgment entry. Thus, Massey's argument on appeal that he was "unaware" that the May 11, 2009 hearing involved his child support obligations is meritless.

**{¶57}** Third, Massey contends the trial court abused its discretion by failing to use the federal tax returns he provided for the years 2005-2007 to compute his gross income. First, a court is not limited to considering the gross income as stated in the tax returns. See *Staffrey v. Smith*, 7th Dist. No. 09-MA-107, 2010-Ohio-1296, at ¶28. "Although federal and state tax documents provide a proper starting point to calculate a parent's income, they are not the sole factor for the trial court to consider." (Citations omitted.) *Id.* Further, Massey failed to provide the court with any supporting documentation such as W-2's or 1099's to support what he alleged to be his gross income. Finally, as discussed, the trial court expressly found after the August 25, 2008 hearing that almost all of Massey's testimony was unreliable. As such, the court chose not to rely solely on Massey's tax returns when determining his gross income. Generally, an appellate court defers to the credibility determinations made by the trial court. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. Thus, this argument is meritless.

**{¶58}** Fourth, Massey claims the trial court erred by imputing income to him without first finding he is voluntarily unemployed or underemployed and then analyzing the criteria set forth in R.C. 3119.01(C)(11). The trial court did not impute income to Massey. Rather the trial court extrapolated Massey's annual gross income from the

limited verified financial data it had before it, i.e., his commissions from the first four months of 2007. Ohio courts have held that if a parent is evasive or avoidant in providing income verification, a court may use the financial data that is available to determine the parent's gross income, even if the parent is not voluntarily unemployed or underemployed. *Cole v. Cole*, 5th Dist. No. 2006-CA-00190, 2007-Ohio-54; *Bach v. Bach* (Sept. 10, 1999), 2d Dist. No. 17497.

**{¶59}** First, in *Cole*, the father testified during a second trial on remand that he was unsure of his current income. In calculating gross income for child and spousal support purposes, the trial court used the father's income information from a worksheet submitted at the original trial several years earlier. On appeal, like Massey, the father argued that the trial court erred by imputing income to him without first finding he was voluntarily unemployed or underemployed pursuant to R.C. 3119.01(C)(11). The Fifth District disagreed, concluding that since the father "testified evasively" and "attended trial with little or no information regarding his finances," the trial court properly relied on the past income information to determine his support obligations. Id. at ¶22-23. The appellate court noted that the father had the option of moving for modification if he could present sufficient financial information demonstrating his income had decreased. Id.

**{¶60}** Second, in *Bach*, the Second District held that the trial court did not abuse its discretion by estimating the father's income based on other information in the record where the father was evasive, forgetful, kept poor business records and the trial court was therefore skeptical about his credibility. Id. at *4-5.

**{¶61}** Similarly, Massey was evasive regarding his income. He listed incorrect addresses for his prior employers. He failed to provide documentation, such as W-2 or 1099 forms to support his unsworn financial affidavit or his tax returns. He testified that pursuant to his 2007 tax return he earned $39,593.76 in 2007, but later admitted he had one sale in 2007 that resulted in a commission check of $45,000.00. Further, Massey testified he had over $3,000.00 in monthly expenses, and that all of his bills were current, yet he claimed to have earned only $9,600.00 from January 1, 2008 to July 1, 2008. He claimed he had received a $30,000.00 inheritance from his mother in 2005,

but otherwise could not explain how he was meeting his monthly expenses with such a low income. After the August 25, 2008 hearing, the trial court found Massey not credible. And despite his promises during that hearing to provide verification of his income as ordered by the court, Massey never did so, and failed to appear for an additional hearing on the matter. For these reasons, the trial court was reasonable in calculating Massey's gross income using the limited verified information it had before it.

{¶62} In conclusion, all of Massey's assignments of error are meritless. The trial court properly used the limited information it had before it to project Massey's annual gross income. Thus, the trial court's income determination was supported by competent, credible evidence and not an abuse of discretion. Accordingly, the judgment of the trial court is affirmed.

Waite, P.J., concurs.

Donofrio, J., concurs.