[Cite as *Thomaselli v. Thomaselli*, 2014-Ohio-2469.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| CONSTANCE THOMASELLI, | ) | |
| | ) | |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | CASE NO. 13 JE 18 |
| V. | ) | |
| | ) | OPINION |
| ARTHUR M. THOMASELLI, | ) | |
| | ) | |
| DEFENDANT-APPELLEE. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Court of Common Pleas, Domestic Relations Division of Jefferson County, Ohio
Case No. 12DR146

JUDGMENT:     Reversed and Remanded

APPEARANCES:
For Plaintiff-Appellant     Attorney Mary F. Corabi
424 Market Street
Steubenville, Ohio 43952

For Defendant-Appellee     Attorney Gary M. Stern
231 Dusty Lane
Steubenville, Ohio 43952

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: June 2, 2014

DONOFRIO, J.

{¶1} Plaintiff-appellant, Constance Thomaselli, appeals from a Jefferson County Common Pleas Court judgment granting a divorce between her and defendant-appellee, Arthur Thomaselli.

{¶2} The parties in this case were married on November 10, 1989. No children were born as issue of the marriage. On May 4, 2012, appellant filed a complaint for divorce.

{¶3} The matter proceeded to a trial where the court heard testimony from both parties regarding their debts and assets. The court made numerous valuations of property and divided the property and debt. The findings relevant to this appeal will be discussed in detail in appellant's assignments of error. The court granted the parties a divorce and entered judgment accordingly.

{¶4} Appellant filed a timely notice of appeal on July 2, 2013.

{¶5} Appellant raises four assignments of error, the first of which states:

THE COURT FAILED TO RETAIN JURISDICTION ON THE ISSUE OF SPOUSAL SUPPORT IN CONSIDERATION OF THE DURATION OF THE MARRIAGE, THE AGE AND HEALTH OF THE APPELLANT.

{¶6} Appellant requested a spousal support award. The court did not award spousal support. It noted that appellant claimed several disabilities but is still working full time and earning more than appellee. Appellant earns $32,000 annually and appellee earns $30,000. Thus, the court found appellant's claim for spousal support was inappropriate. Additionally, the court did not retain jurisdiction over spousal support.

{¶7} Appellant argues the trial court should have retained jurisdiction over the issue of spousal support, even though the court did not make a spousal support award. She claims the evidence demonstrated that she has physical and mental problems and is facing the unknown with her health issues. And she asserts appellee is younger and healthier than she is.

**{¶8}** It is important to note that appellant does not challenge the trial court's decision not to award spousal support at this time. Instead, appellant is only challenging the court's decision not to retain jurisdiction over the issue of spousal support.

**{¶9}** We review a trial court's decision not to retain jurisdiction over the issue of spousal support for abuse of discretion. *Molnar v. Molnar*, 7th Dist. No. 10-JE-19, 2011-Ohio-4318, ¶26. Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶10}** The trial court did not abuse its discretion in deciding not to retain jurisdiction over the issue of spousal support.

**{¶11}** Appellant testified that, in 2013, at the time of the divorce hearing, she was earning an annual salary of $32,916 as a property manager where she had worked for the past 13 years. (Tr. 6-7). Appellant also testified as to her medical history. She stated that in 2007, she tore both rotator cuffs. (Tr. 34). She had surgery in 2008 and 2009 to repair them. (Tr. 34). She suffered 34 percent permanent partial disability in her right arm. (Tr. 34). Appellant stated that through all of her injuries and surgeries she has continued to work. (Tr. 35). Appellant testified she continues to have pain in her arm. (Tr. 35). Appellant also testified that she is depressed and has attended counseling. (Tr. 35). She again emphasized that she has never missed work. (Tr. 35).

**{¶12}** Appellee's only testimony on the subject was that his annual income is $30,000. (Tr. 81).

**{¶13}** The parties' income is almost identical, with appellant earning slightly more than appellee. That is the reason the court did not award spousal support. The court apparently saw no reason to retain jurisdiction over the issue of spousal support when it did not even put on an order of spousal support. Even though appellant testified that she had some physical and mental health issues, these issues have

been ongoing since 2007. By her own testimony, appellant's health issues have never prevented her from working. She has been at the same job since before her injuries and has continued that job up through the present time. Thus, she gave no indication that her physical or mental health issues would have any impact on her ability to work and maintain her current job. Therefore, the trial court did not abuse its discretion in not retaining jurisdiction over the issue of spousal support.

{¶14} Accordingly, appellant's first assignment of error is without merit.

{¶15} Appellant's second assignment of error states:

THE TRIAL COURT FAILED TO AWARD THE SEPARATE REAL ESTATE INTEREST OF THE APPELLANT.

{¶16} The evidence in this case demonstrated that appellant purchased the marital home in 1987, two years prior to the marriage, for $35,000. (Tr. 14). Appellant put $10,000 down on the house and took out a $25,000 mortgage. (Tr. 14). After the parties were married, in 1994 they refinanced the mortgage and financed $44,704. (Tr. 14). Later that same year, the parties took out a home equity loan for $11,000. (Tr. 14-15). In 1998, the parties refinanced again, this time for $55,000. (Tr. 15). Additionally, both parties testified that appellee had been making the mortgage payments. (Tr. 52-53, 81).

{¶17} The court found that the home was currently worth approximately $126,000 and that it was encumbered by a mortgage and a home equity loan totaling approximately $99,000. It noted that appellant purchased the home two years prior to the marriage. It appears the court treated the home as marital property without specifically making such a finding and without setting out its reasons for making the finding.

{¶18} Here appellant contends the trial court should have awarded separate interest in the marital residence to her because she purchased the house two years prior to the marriage. She claims the undisputed evidence showed that she had a separate property interest of $45,000, which exceeded the value of the equity in the

marital residence.

**{¶19}** A trial court's decision regarding whether property is marital or separate is reviewed under an abuse of discretion standard. *Maloney v. Maloney*, 160 Ohio App.3d 209, 826 N.E.2d 864, 2005-Ohio-1368, ¶8, citing *Neville v. Neville*, 99 Ohio St.3d 275, 791 N.E.2d 434, 2003-Ohio-3624.

**{¶20}** "Marital property" includes real property, or any interest in real property, that is currently owned by either or both spouses and that was acquired during the marriage. R.C. 3105.171(A)(3)(a)(i) and (ii). "Separate property," on the other hand, includes real property, or any interest in real property, that was acquired by one spouse prior to the date of the marriage. R.C. 3105.171(A)(6)(ii). The commingling of separate property with other property does not destroy the identity of the separate property, except when the separate property is not traceable. R.C. 3105.171(A)(6)(b).

**{¶21}** "In divorce proceedings, the court *shall* * * * determine what constitutes marital property and what constitutes separate property." (Emphasis added), R.C. 3105.171(B). See also, *Silicia v. Silicia*, 7th Dist. No. 99-CO-66, 2001-Ohio-3364. This duty, to classify property in a divorce proceeding as marital or separate before dividing it, is mandatory. *Girton v. Girton*, 4th Dist. No. 08CA30, 2009-Ohio-4458, ¶6. Additionally, the trial court must make findings in sufficient detail to allow for meaningful appellate review. *Woody v. Woody*, 4th Dist. No. 09CA34, 2010-Ohio-6094, ¶24; R.C. 3105.171(G) ("the court shall make written findings of fact that support the determination that the marital property has been equitably divided.")

**{¶22}** In this case, the trial court failed to determine whether the home was entirely marital property or if appellant owned a separate property interest in the home since she purchased it prior to the marriage. The court acknowledged in a footnote that appellant purchased the property prior to the marriage for $35,000 and that a mortgage balance of $24,000 remained at the time of the marriage. And in its division of assets, the court awarded the house to appellant, along with its outstanding mortgage and equity loan. But the court never performed its statutory

duty to make a determination as to whether appellant owned a separate property interest in the house. The court should have made this determination, along with sufficient findings in support, prior to awarding the house. The court's failure to make such a determination warrants a remand of this case so that the court can make its statutorily-required findings. See *Fordyce v. Fordyce*, 7th Dist. No. 10 NO 372, 2011-Ohio-3406; *Silicia*, 2001-Ohio-3364.

{¶23} Accordingly, appellant's second assignment has merit.

{¶24} Appellant's third assignment of error states:

THE TRIAL COURT ERRED IN FAILING TO DIVIDE ALL THE ASSETS AND DEBTS OF THE PARTIES.

{¶25} In this assignment of error, appellant asserts the trial court failed to divide numerous assets. The assets appellant asserts the court neglected to divide are:

1. First Choice America Federal Credit Union IRA with a $409.86 value
2. WesBanco Account with a $265.78 value
3. WesBanco Account with a $350.00 value
4. Parkvale Account with a $50.00 value
5. West Mark Account with a $3,030.50 value
6. First Choice America Federal Credit Union Saving Account with a $20.20 value
7. First Choice America Federal Credit Union Checking Account with a $14.71 value

{¶26} Additionally, appellant argues the trial court assigned values to various assets that are not supported by the evidence. Specifically, she points to the values assigned by the court to the Cadillac, the Chevrolet truck, and the West Virginia house.

{¶27} The trial court failed to include several assets in its division of property.

None of the accounts listed above appear in the trial court's division of assets with the exception of the WesBanco account with a $350-value (the court actually listed the value as $353). But appellant testified regarding each of these accounts and each account, along with the last four digits of each account number, is listed in her proposed division of assets. Additionally, in appellee's proposed division of assets, he lists three of the accounts as his separate property (WesBanco accounts ending in 42000, 3897, and 1210). The court awarded account 3897 to appellant; however, it did so without making a determination as to whether it was separate or marital property. The court did not make any determination as to the separate or marital characterization of the other two accounts nor does it appear that the court awarded these assets. The trial court did find that two accounts are the property of appellee and his parents. But it is not entirely clear, without reference to account numbers, whether these are the same accounts appellant listed above because appellee characterized them as his separate property and not as the property of his parents. And the court makes no mention of the First Choice accounts. Thus, we must remand this matter to the trial court so that the court can make a complete classification of all accounts as marital or separate and then divide all of the accounts.

{¶28} Appellant also takes issue with the value the court assigned to the parties' second home, known as the "lake house," the Cadillac, and the Chevrolet truck.

{¶29} As to the lake house, appellant testified that its value was $85,500 because that it is how much it is insured for. (Tr. 12). Appellee testified the house is worth $35,000 because that is what the parties paid for it less than five years ago. (Tr. 78). The parties both testified that they only own the house, however, and not the real estate on which it sits. (Tr. 13, 78-79). They only own a 99-year lease on the land, of which 65 years remain. (Tr. 13, 78-79).

{¶30} The trial court valued the lake house at $35,000. It found the fair market value to be more accurately determined by the recent purchase price than by

the replacement price. And the court also took into consideration that the lake house is located on property that the parties do not own. It was within the trial court's discretion to determine which testimony was more credible in this case.

**{¶31}** As to the Cadillac, appellant testified that she owns a 2004 Cadillac Deville that is appraised at $6,200. (Tr. 16-17). Appellee did not testify as to a value for the Cadillac.

**{¶32}** And as to the truck, appellant testified that appellee owns a 1996 Chevrolet K1500 truck valued at approximately $5,000. (Tr. 17). Appellant testified that the truck was worth "maybe less" than $5,000. (Tr. 80).

**{¶33}** The trial court used the Kelly Blue Book value for a 2004 Cadillac Seville [sic.], which was $6,000, and for a 1996 Chevrolet 1500 truck, which was $3,400. In so doing, the court used information from outside the record to come to these values. This was in error. A court cannot consult the NADA Blue Book on its own and take judicial notice of the average listed retail value of a vehicle. *Blake v. Blake*, 3d Dist. No. 10-05-07, 2005-Ohio-4186, ¶29; *Jones v. Cynet, Inc.*, 8th Dist. No. 79769, 2002-Ohio-2617, ¶31. Thus, the court's valuation of the parties' vehicles was in error.

**{¶34}** Accordingly, appellant' third assignment of error has merit in part.

**{¶35}** Appellant's fourth assignment of error states:

THE TRIAL COURT ERRED IN FINDING FINANCIAL MISCONDUCT ON THE PART OF THE APPELLANT.

**{¶36}** The trial court found that appellant "has a huge gambling problem." It found that in 2010, appellant reported $11,390.00 in gambling winnings and offsetting losses on her taxes. And in 2011, appellant reported $21,950.00 in gambling winnings and offsetting losses. In 2012, appellant won $14,000.00 and presumably claimed offsetting losses. The court noted that appellant claimed her losses should be determined by her tax returns. But the court found this would grossly underestimate her losses. The court then made the following findings:

All of wife's gambling is done on machines common in Weirton, West Virginia. The payout per dollar wagered is well known to range from 28% to 40%. In order to win $46,485.00 over the past three (3) years from constant gambling at machines over the long haul one would have to wager many times that amount. Using the 40% return as an average (greatly favors Plaintiff) then one would have to wager $116,212.00 to win $46,485.00. Those gross winnings of $46,485.00 over three (3) years therefore actually represent $69,727.00 in <u>net</u> losses. But it is worse than that. The winnings Plaintiff reported to the IRS are only those winnings that exceeded $1,200.00 in a single pot. All of the winnings less than $1,200.00 are not reported to the IRS and are not claimed on her tax return. Those gross winnings would also represent a <u>net</u> loss of 1.5 times the gross winnings. Another huge net loss.

**{¶37}** Appellant challenges the trial court's finding that her gambling constituted financial misconduct. She first argues the court erred in taking judicial notice of the gambling pay-out rates of certain machines in West Virginia and then using these pay-out rates to compute her annual gambling losses. Second, she argues that her gambling does not constitute financial misconduct. Appellant points out that she started gambling three years before the parties' separation and appellee was aware of it and even gave her funds with which to gamble. Thus, she claims there was no wrongdoing on her part. For these reasons, appellant argues the trial court erred in offsetting the distribution in favor of appellee by $69,727.00, which it found to be the minimal amount of appellant's gambling losses.

**{¶38}** Pursuant to Evid.R. 201(B), a court may take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

**{¶39}** No evidence of the payout rates of West Virginia gaming machines was offered at the trial. On its own initiative the trial court took judicial notice of these "facts." It is within a court's discretion to take judicial notice whether or not requested by a party. Evid.R. 201(C). But a court may not take judicial notice of a fact simply because the court has personal knowledge of that fact. *Staffrey v. Smith*, 7th Dist. No. 09-MA-107, 2010-Ohio-1296, ¶38.

**{¶40}** The court erred in including the "well known" payout per dollar wagered rate. What the payout rate may be on certain gaming machines is not a fact that is generally known within the territorial jurisdiction of the trial court. Moreover, the court did not give any sources where this "well known" information could be found or that the information came from sources whose accuracy cannot reasonably be questioned. The court took it upon itself to include the payout rates that it obtained from some unknown source and then to use averages to determine what it believed appellant's gambling losses to be (in excess of $69,727.00). The court then used this figure to offset the discrepancy between the parties' asset division.

**{¶41}** Appellee concedes that the court may have erred in taking judicial notice of these payout rates. But he argues there was enough evidence to support the trial court's findings without reference to the gaming payout rates. The only specific evidence as to appellant's losses was the information provided on her tax forms. These amounts were $11,390.00 in 2010, $21,095.00 in 2011, and $14,000.00 in 2012, for a total of $46,485.00. (Tr. 44, 47, 54; Exs. 1, 2). This is a $23,242.00 difference from the figure that the trial court used. There are other references in the record as to appellant's gambling losses, but the figures are not exact. Thus, the trial court erred in finding that appellant incurred $69,727.00 in gambling losses and using this amount to offset the discrepancy between the parties' total distribution of assets.

**{¶42}** Accordingly, appellant's fourth assignment of error has merit.

**{¶43}** For the reasons stated above, the trial court's judgment is hereby reversed and the matter is remanded. On remand, the court shall determine whether

appellant has a separate property interest in the marital home, shall classify all of the parties' accounts as separate or marital property and then distribute all accounts, shall re-value the parties' vehicles based on the evidence offered, and shall reconsider its finding of appellant's financial misconduct without reference to facts outside of the record. Once the trial court has done these things, it will be necessary for it to enter a new equitable division of assets.

Waite, J., concurs.

DeGenaro, P.J., concurs.