[Cite as *Facemyer v. Facemyer*, 2021-Ohio-48.]

| | | |
|---|---|---|
| STATE OF OHIO       )<br>                   )ss:<br>COUNTY OF MAHONING  ) | | IN THE COURT OF APPEALS<br>SEVENTH JUDICIAL DISTRICT |

GREGORY J. FACEMYER

      Appellant/Cross-Appellee

      v.

KRISTEN K. FACEMYER

      Appellee/Cross-Appellant

C.A. No.      2019 MA 109

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MAHONING, OHIO
CASE No.    12 DR 437

DECISION AND JOURNAL ENTRY

Dated: January 12, 2021

HENSAL, Presiding Judge.

{¶1}    Gregory Facemyer appeals a judgment of the Mahoning County Court of Common Pleas, Domestic Relations Division, that terminated his shared parenting plan with Kristen Facemyer. Ms. Facemyer has cross appealed. For the following reasons, this Court affirms.

I.

{¶2}    The Facemyers divorced in 2013. They have two girls who are minors. The older one was born in 2005 and the younger one in 2008. At the time of the divorce, the Facemyers adopted a shared parenting plan that divided parenting time evenly but required the girls to change households a couple of times a week. Under the terms of the plan, although the parties were supposed to work together to make decisions for the girls, if they could not, Mother had final say over educational matters and Father had final say over medical matters.

{¶3}    In practice, the parties were rarely able to agree on anything and encountered numerous other difficulties executing the shared parenting plan. The plan assigned a certain time

each day for the parent who did not have the girls to call and speak with them. According to the Facemyers, both of them repeatedly had difficulty reaching the girls during their allotted time. They also had difficulty sharing clothing, sharing the equipment for the girls' activities, prioritizing the girls' activities, and getting the younger child evaluated for a possible developmental delay. These difficulties led to both parents filing motions for contempt against the other.

{¶4} In 2016, Mother moved to modify the shared parenting plan and later to terminate the plan altogether. All of the then-pending motions were heard before a magistrate across 27 non-sequential days in 2018. Following the hearing, the magistrate issued a decision that terminated the shared parenting plan and designated Mother as the residential parent. Both sides objected to the decision, lodging a total of 28 objections. The trial court adopted the magistrate's decision, however, without any modifications. Father has appealed, assigning eight errors. Mother has cross-appealed, assigning six errors. We will address a couple of Father's assignments of error together because they are related.

II.

FATHER'S ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED BY TERMINATING THE PARTIES' SHARED PARENTING PLAN, AS SAID TERMINATION IS NOT IN THE BEST INTEREST OF THE PARTIES' MINOR CHILDREN.

{¶5} In his first assignment of error, Father argues that the trial court should not have terminated the shared parenting plan because only two of the statutory factors supported termination. Mother argues the decision was correct because many of the factors were simply neutral and the negative factors weighed heavily in favor of termination. "The standard of review for matters concerning child custody is whether the trial court committed an abuse of discretion." *In re N.W.F.*, 7th Dist. Jefferson No. 18 JE 0030, 2019-Ohio-3956, ¶ 15.

{¶6} "[A] court may terminate a prior final shared parenting decree that includes a shared parenting plan * * * upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children." R.C. 3109.04(E)(2)(c). "The decision to terminate a shared parenting plan is governed by R.C. 3109.04(E)(2)(c) and must, in every instance, be made in the best interest of the child." *Mogg v. McCloskey*, 7th Dist. Mahoning No. 12 MA 24, 2013-Ohio-4358, ¶ 20. In other words, "the trial court should utilize the best interest standard in determining whether to terminate a shared parenting agreement." *Patrick v. Patrick*, 7th Dist. Carroll No. 17 CA 0913, 2017-Ohio-9380, ¶ 23.

{¶7} "In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in [Section 3109.04(F)(1)], the factors enumerated in section 3119.23 of the Revised Code," and all of the factors listed in Section 3019.04(F)(2). R.C. 3109.04(F)(2); *Hise v. Laiviera*, 7th Dist. Monroe No. 18 MO 0010, 2018-Ohio-5399, ¶ 53. The best interest factors in Section 3109.04(F)(1) include: (a) the parents' wishes; (b) the wishes and concerns of the child if the court interviewed the child in chambers; (c) the child's interaction and interrelationship with parents, siblings, and any other person who may significantly affect the child's best interest; (d) the child's adjustment to the home, school, and community; (e) the mental and physical health of all involved; (f) the parent more likely to honor and facilitate court-approved parenting time; (g) any parent's failure to make all court-ordered child support payments, including arrearages; (h) whether a parent or a household member has been convicted of certain criminal offenses, a parent was found to be the perpetrator in an adjudication of an abused or neglected child, or there is reason to believe a parent acted in a manner resulting in a child being an abused or neglected child; (i) whether the residential parent or one of the parents subject to a shared parenting decree has continuously and

willfully denied the other parent's right to parenting time in accordance with an order of the court; and (j) whether either parent established, or is planning to establish, a residence outside of this state. The additional factors in Section 3109.04(F)(2) include: (a) the ability to cooperate and make decisions with respect to the child jointly; (b) the ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent; (c) any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent; (d) the geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting; and (e) the guardian ad litem's recommendation (if one was appointed). R.C. 3109.04(F)(2). The factors in Section 3119.23 primarily concern the financial resources of the parties and children and their standard of living, but also any "[s]pecial and unusual needs of the child or children, including needs arising from the physical or psychological condition of the child or children[.]" R.C. 3119.23, R.C. 3119.23(A).

{¶8} Father argues that the only factors that the trial court found that supported the termination of the shared parenting plan were the parties' inability to cooperate and make decisions jointly regarding the children and the parties' failure to completely encourage the sharing of love and affection with the other. He does not challenge the trial court's finding that those factors weigh in favor of terminating the plan but argues that they did not outweigh all the other factors. He notes that the factors in favor of shared parenting were the geographical proximity of the parties, both parties' love and affection for the children, the children's strong desire to continue with the existing plan, the absence of any history of abuse, the children's extensive interaction with their parents and extended families, the fact that the children had resided with both parents for a significant amount of time, the children's adjustment to the homes of both parties, the absence of

any significant health concerns, and also that there had been no issues with the payment of child support, no one had any criminal involvement, and no one was expecting to relocate.

{¶9} The record is replete with examples of the parties' inability to communicate, even over the most trivial matters. Father argued that Mother would not take his calls or discuss childcare matters with him. Mother argued it was because Father called constantly and did nothing but berate and pick fights with her when she did talk to him. The trial court found credible Mother's assertion that Father sends her an excessive number of messages. The fact that one parent had final say over educational matters and the other had final say over medical matters created a logjam where the two areas overlapped in connection with the younger daughter's reading difficulties. Father suspected that it was because she had a developmental delay, which made it a medical matter and gave him the authority to have the daughter undergo whatever testing he desired as well as the type of tutoring she would receive as treatment. He began not even attempting to consult with Mother before scheduling medical appointments, proceeding directly to exercising his final authority over such matters. He also thought that, because the younger child's educational difficulties may be caused by her delays, it made him responsible for pushing the child's school to implement an individual education plan or 504 plan for the child. Mother, on the other hand, scheduled activities or had the girls do their homework during Father's allotted time for telephone calls and would not return all of the things that Father had purchased for the girls to wear, partially because she does not consider undergarments to be clothing.

{¶10} The parties were also unable to share the same space. For example, Mother alleged that Father's attendance at the girls' activities was an interference with her parenting time. The children reported to the magistrate that Mother and Father would yell at each other with Father

yelling more than Mother. At one of the younger child's doctor appointments that both parents attended, the child spent the entire examination with her shirt pulled up over her head.

{¶11} The Ohio Supreme Court has explained that, because "[t]he General Assembly did not assign any relative weight to the factors * * *, the weight assigned to each factor lies within the trial court's sole discretion." *Cyran v. Cyran*, 152 Ohio St.3d 484, 2018-Ohio-24, ¶ 24. Upon review of the record, we conclude that the trial court did not exercise improper discretion when it determined that shared parenting was not in the children's best interest. Father's first assignment of error is overruled.

FATHER'S ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY FAILING TO MODIFY THE PARTIES' SHARED PARENTING PLAN, AS A MODIFICATION IS IN THE BEST INTEREST OF THE MINOR CHILDREN.

{¶12} In his second assignment of error, Father argues that the court should have just modified the shared parenting plan instead of terminating it. He argues that continuing the order would have been viable with some modifications. According to Father, the parties would not have a communication problem if Mother reciprocated his attempts to communicate. He contends that Mother should not be able to thwart the shared parenting plan by her unilateral failure to honor it. He also notes that the court's decision sets out parameters with respect to the transfer of clothing, telephone contact with the children, sporting activities, tutoring, possession of passports, and communication between the parties. He argues that all those provisions could have been incorporated into an amended shared parenting plan.

{¶13} Father's argument overlooks the discord that resulted from the fact that the shared parenting plan gave him final say over medical matters and Mother final say over educational matters. By ending the shared parenting plan and giving Mother decision-making authority over

both areas, the court has eliminated the parties' power struggle over whether the younger daughter's reading difficulties are within one realm or the other, which the court found was one of the primary sources of the parties' discord. Father retains the ability to seek court approval of additional medical testing or treatment if he believes Mother is not addressing all of the children's needs. The order also requires Mother to obtain an evaluation of the younger child for the remaining health concern that Father had for the child. Upon review of the record, we conclude that the trial court did not exercise improper discretion when it determined that it was in the children's best interest to terminate the shared parenting plan instead of modifying it. Father's second assignment of error is overruled.

FATHER'S ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED BY FAILING TO FIND THE DEFENDANT/APPELLEE IN CONTEMPT OF COURT FOR HER REPEATED FAILURE TO ABIDE BY THIS COURT'S PREVIOUS ORDERS.

{¶14} In his third assignment of error, Father argues that the trial court should have found Mother in contempt of court because there was absolute and uncontroverted evidence that Mother had failed to comply with the shared parenting plan. This Court "will not reverse the decision of the court below in a contempt proceeding in the absence of a showing of an abuse of discretion." *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11 (1981); *T.C. v. K.C.*, 7th Dist. Noble Nos. 17 No 0453, 17 No 0454, 2018-Ohio-5403, ¶ 42.

{¶15} "The burden of proof for the moving party in a civil contempt action is clear and convincing evidence." *Ferguson v. Boron*, 7th Dist. Columbiana No. 15 CO 0030, 2018-Ohio-69, ¶ 14. The trial court found that neither of the parties met their burden of proof as to their respective motions for contempt. In his appellate brief, Father did not direct this Court to any specific language in the shared parenting plan that Mother violated or any specific testimony or other

evidence that clearly proved his allegations. Although he has pointed to some alleged examples in his reply brief, even if he had developed an argument as to how they proved by clear and convincing evidence that Mother violated the shared parenting plan, this Court will not address arguments that are made for the first time in a reply brief. *Julian v. Creekside Health Ctr.*, 7th Dist. Mahoning No. 03MA21, 2004-Ohio-3197, ¶ 81. We, therefore, conclude that Father has not established that the trial court exercised improper discretion when it failed to hold Mother in contempt. Father's third assignment of error is overruled.

FATHER'S ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED BY DESIGNATING THE DEFENDANT/APPELLEE AS THE SOLE RESIDENTIAL PARENT OF THE PARTIES' MINOR CHILDREN, AS SAID DESIGNATION IS NOT IN THE BEST INTEREST OF THE PARTIES' MINOR CHILDREN.

FATHER'S ASSIGNMENT OF ERROR V

THE TRIAL COURT ERRED BY FAILING TO DESIGNATE THE PLAINTIFF/APPELLANT AS THE SOLE RESIDENTIAL PARENT OF THE PARTIES' MINOR CHILDREN, AS SAID DESIGNATION IS IN THE BEST INTEREST OF THE PARTIES' MINOR CHILDREN.

{¶16} In his fourth assignment of error, Father argues that the trial court incorrectly designated Mother as the children's sole residential parent. In his fifth assignment of error, Father argues that the court should have designated him as the residential parent instead. This Court reviews the trial court's designation of the residential parent for an abuse of discretion. *See Flicky v. Flicky*, 7th Dist. Mahoning No. 99 C.A. 212, 2000 WL 1670877, *3 (Oct. 31, 2000).

{¶17} Father argues that the court did not give any reason for selecting Mother as the residential parent over himself. According to him, because Mother was responsible for sabotaging their communications and other aspects of the shared parenting plan, the facts supported appointing him as the residential parent. Father also argues that he has undertaken numerous

efforts over the years to identify the children's educational and medical needs. He has attended their school activities, extracurricular activities, medical and dental appointments, tutoring sessions, and school conferences.

{¶18} Courts use the factors in Section 3109.04(F)(1) to determine how to designate parental rights and responsibilities. R.C. 3109.04(F)(1); *Surgenavic v. Surgenavic*, 7th Dist. Mahoning No. 08 MA 29, 2009-Ohio-1028, ¶ 4. The decision adopted by the trial court worked through each of those factors. There were no significant concerns about the parenting ability of either parent, and the children were well-adjusted to both homes. The court also found that the parenting time schedule had been followed for the most part and that neither party had willfully denied the other parenting time.

{¶19} Although Mother admitted that she limited her communication with Father and did not always respond to his messages, the trial court found her behavior reasonable under the circumstances because Father's excessive communications could be considered obsessive and potentially manipulative. The record indicates that Mother also attended the girls' activities, attended the medical appointments that Father told her about, and arranged for her own tutoring of the younger child. Upon review of the record, it appears that either parent was well-suited to be the girls' residential parent. We, therefore, cannot say that the trial court abused its discretion when it bestowed that designation on Mother instead of Father. Father's fourth and fifth assignments of error are overruled.

FATHER'S ASSIGNMENT OF ERROR VI

THE TRIAL COURT ERRED BY GRANTING THE DEFENDANT/APPELLEE THE SOLE AUTHORITY TO MAKE DECISIONS OVER EDUCATIONAL AND MEDICAL MATTERS OF THE PARTIES' MINOR CHILDREN, SINCE THE EVIDENCE CLEARLY SUPPORTS THE FACT THAT SHE HAS FAILED TO MAKE SAID DECISIONS IN THE BEST INTEREST OF THE PARTIES' MINOR CHILDREN. THE TRIAL COURT ERRED BY FAILING TO

DESIGNATE THE PLAINTIFF/APPELLANT AS THE SOLE AUTHORITY TO MAKE DECISIONS OVER EDUCATIONAL AND MEDICAL MATTERS OF THE PARTIES' MINOR CHILDREN, SINCE THE EVIDENCE CLEARLY SUPPORTS THE FACT THAT HE HAS MADE SAID DECISIONS IN THE BEST INTEREST OF THE PARTIES' MINOR CHILDREN.

{¶20} In his sixth assignment of error, Father argues that he should have been given authority to make educational and medical decisions for the children because he has done a better job of it than Mother. He argues that, as a licensed physician for many years, he has the education and training to make the best decisions for the children. He notes that Mother does not have any training or education in educational matters. He also argues that he has been more active with the girls' medical appointments.

{¶21} Mother argues that the reason she did not attend as many medical appointments as Father is because he failed to notify her of some of them. She also did not attend some of the appointments for more routine matters to spare the children the anxiety of having both parents together. Mother argues that she is a college-educated pharmacist who is logical and well-spoken and who has less trouble controlling her anger than Father.

{¶22} Because of her difficulty with reading, Father had the younger child evaluated at a children's hospital. The clinicians reported that she tested as having average cognitive ability, but they diagnosed her with an adjustment disorder with anxiety symptoms, with her most significant stressors being school and the parties' relationship. Based on her diagnosis, Father pushed to have the school evaluate the child to see if she qualified for an educational plan, but the school resisted because it did not see any qualifying behavior by the child. Although the younger child did have below-average standardized reading scores, she was able to pass the third-grade reading test using an alternative evaluation method. She also performed well on her schoolwork.

{¶23} The record shows that Mother was concerned about the fact that Father had taken the younger child for evaluation by so many professionals already and wanted to do more, even though the girl was only 8 years old. Although Mother acknowledged that the girl had difficulties with anxiety and below-average reading scores, she testified that the girl was a hard worker and had been doing well with her school work, leading her to agree with the school that the girl did not have a more significant developmental delay necessitating a formal intervention plan.

{¶24} A concerning aspect of Father's medical decision-making was that it appears he reached a point where he no longer even attempted to consult with Mother regarding what would be best for the children, immediately scheduling whatever appointments he thought were necessary because under the shared parenting plan he had final say if the parties could not agree. He also repeatedly sent school officials new requests for evaluations instead of pursuing the administrative remedies available to him following denials of his earlier requests. In light of these circumstances, we cannot say that the trial court exercised improper discretion when it gave Mother sole authority over the children's educational and medical matters. Father's sixth assignment of error is overruled.

FATHER'S SEVENTH ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED BY GRANTING THE DEFENDANT/APPELLEE THE RIGHT TO CLAIM BOTH CHILDREN AS A TAX DEPENDENCY EXEMPTION.

{¶25} In his seventh assignment of error, Father argues that he should be entitled to claim the children as dependents for tax purposes. He argues that the court failed to consider any of the necessary factors or support its decision with any reasoning. Mother argues that Father did not submit any evidence to overcome the presumption that the exemption should be awarded to the residential parent. "We review the trial court's determination of which parent may claim the minor

child as a dependent for federal income tax purposes under an abuse of discretion standard." *Walley v. Iannizzaro*, 7th Dist. Mahoning No. 17 MA 0124, 2018-Ohio-3939, ¶ 22.

{¶26} Section 3119.82 provides that a court "may permit the parent who is not the residential parent * * * to claim the children as dependents for federal income tax purposes only if the court determines that this furthers the best interest of the children * * *. In making its decision, the court shall consider "any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor * * *." *Id*.

{¶27} The trial court did not specifically work through each of the factors listed in Section 3119.82, but wrote that, in light of Section 3119.82 and the evidence presented, Mother would be entitled to claim the minor children as dependents. Accordingly, unlike some of the cases cited by Father, we cannot say that the court failed to consider either the appropriate statute or the evidence when it made its determination. Father also has not directed this Court to any evidence in the record that indicates there would be tax savings if Father is permitted to claim the children or that allowing him the exemption is necessary based on the financial circumstances and needs of the parties. We, therefore, conclude that Father has not established that the trial court did not comply with Section 3119.82 or exercised improper discretion when it directed Mother to claim the children as tax dependents. Father's seventh assignment of error is overruled.

FATHER'S EIGHTH ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED AS THE DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AS THERE IS NO COMPETENT OR CREDIBLE EVIDENCE TO SUPPORT THE DECISION.

{¶28} In his eighth assignment of error, Father argues that termination of the parties' shared parenting plan is against the manifest weight of the evidence. According to Father, the trial court's order solves many of the issues that the parties had, which led to the additional litigation. It also awards him relatively equal parenting time as Mother. Father also notes that the children desire that the parties share responsibility in raising them. Father argues that, collectively, the order issued by the trial court is, in essence, a new workable shared parenting plan. He, therefore, argues that it was an abuse of discretion for the court to terminate the shared parenting plan instead of modifying it. In reviewing the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." (Alterations sic.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103,115 (9th Dist.2001).

{¶29} Father's argument essentially repeats the arguments he made under his first and second assignments of error. Although the trial court's order sets clear guidelines regarding some of the issues that lead to conflict between the parties, it cannot address the underlying factor that contributed to most of the parties' difficulties, which was their inability to communicate with each other. The terms of the trial court's new order are designed to reduce the parties' need to communicate with each other as much as possible and, thus, reduce their main source of conflict. One of the most significant reasons the parties' failure to communicate affected the children was the fact that Mother had final authority over educational matters and Father had final authority over medical matters. The court found that the parties constantly jockeyed for position as to which realm encompassed an issue, leading to many of the motions that were filed before it. The

protracted competition between the parties and the associated litigation had a documented effect on the children, either in the younger child's anxiety or in the children's expression to the magistrate that they hoped it would be the last time they would have to return to court. By terminating the shared parenting plan and designating one parent as the sole decision-maker for both educational and medical matters, the trial court's order eliminates the most significant sources of conflict between the parties, allowing them to focus on the children instead of each other. Upon review of the record, we conclude that the trial court's decision to terminate the shared parenting plan was not against the manifest weight of the evidence. Father's eighth assignment of error is overruled.

MOTHER'S ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AS A MATTER OF LAW IN NOT DETERMINING MR. FACEMYER'S INCOME FOR CHILD SUPPORT PURPOSES IN ACCORDANCE WITH R.C. 3119.01(C)(13).

**{¶30}** In her first assignment of error, Mother argues that the trial court incorrectly determined Father's income. In particular, she argues that the court improperly allowed him to make unqualifying deductions from his self-employment income. "We review matters concerning child support for abuse of discretion." *Collier v. Collier*, 7th Dist. Harrison No. 17 HA 0010, 2018-Ohio-3596, ¶ 33, citing *Pauly v. Pauly*, 80 Ohio St.3d 386, 390 (1997); *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989).

**{¶31}** According to Mother, the trial court did not calculate Father's self-generated income from his medical practice correctly. Section 3119.01(C)(19) provides that self-generated income "means gross receipts received by a parent from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, and rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts." Mother notes that

to calculate Father's income, the trial court began with the total income figure on Father's tax return, but then added back in expenses he had reported for depreciation on a vehicle, health insurance, the children's cell phone plans, his home newspaper and satellite radio subscriptions, his payment to the guardian ad litem, and a political contribution. It did not add back in some of Father's other expenses, finding that it was unclear whether certain credit card payments, entertainment expenses, and other payments were proper business expenses.

{¶32} Mother argues that it was Father's burden to prove that his alleged business expenses qualified as "ordinary and necessary expenses incurred * * * in generating the gross receipts" so the court should have included those expenses in Father's gross income. *Id*. She also argues that it was the court's obligation to make a finding based on the evidence presented as to whether Father carried his burden.

{¶33} In addition to the previously identified expenses, Mother cross-examined Father about each of his claimed business expenses, including amounts he had spent on legal and professional services, country club fees, his cell phone, medical societies, charitable donations, payments to credit card companies, and for the lease of a vehicle. Father testified that he relied on his accountant of 20 years to accurately identify all of his proper business expenses and that he had receipts to verify each of them, even though he did not bring them to court.

{¶34} This Court has held that "[a] party claiming a business expense has the burden of providing suitable documentation to establish the expense." *Walley*, 2018-Ohio-3939, at ¶ 17. Father supported his claimed business expenses with his tax returns, which is "suitable evidence of a party's income or expenses." *Id*. We note that, before trial commenced, the parties agreed that they would each only call one professional witness to shorten the length of the trial. Father called one of the doctors involved in evaluating the parties' younger daughter for a suspected

developmental delay. Because of the parties' agreement, it was to be expected that Father could not corroborate his testimony that his claimed business expenses were "ordinary and necessary" through his accountant. R.C. 3119.01(C)(19). In light of Father's testimony, we cannot say that the trial court exercised improper discretion when it determined Father's self-generated income. Mother's first assignment of error is overruled.

MOTHER'S ASSIGNMENT OF ERROR II

THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING MR. FACEMYER'S COST OF HEALTH INSURANCE FOR THE PARTIES' CHILDREN WAS $5,400.00 WHEN THERE WAS NO TESTIMONY OR EVIDENCE AS TO THIS AMOUNT, AND THE TRIAL COURT ERRED AS A MATTER OF LAW IN DEDUCTING THE FULL AMOUNT (NOT JUST THE MARGINAL AMOUNT) OF HEALTH INSURANCE ON THE CHILD SUPPORT WORKSHEET.

{¶35} In her second assignment of error, Mother argues that the trial court incorrectly found that Father's cost of health insurance for the children was $5,400. According to Mother, the $5,400 figure was the cost of health insurance to Father and the children together, not just the marginal increase in cost for the children. She also argues that Father admitted on cross-examination that the $5,400 figure was incorrect and that his actual cost was $4,914.02. Mother argues that, because Father did not provide any evidence of the marginal cost of providing health insurance to the children, the court should not have credited him any amount for providing health insurance.

{¶36} Because the cost of health insurance for the girls was a factual finding, we review the trial court's decision to determine whether it is supported by competent, credible evidence. *Massey v. Lambert*, 7th Dist. Columbiana No. 09 CO 29, 2011-Ohio-1341, ¶ 48. Father testified that he pays $450 a month for the girls' health insurance. On cross-examination, Mother presented a list of actual amounts he had paid during 2017, which were less than $450 monthly. Mother,

however, did not show how much Father had paid in January 2017. The exhibits she presented also showed that Father's payments went up from $408 a month to $422 by the end of the year. Father gave his testimony about his insurance costs for the girls in July 2018, so it is plausible that his costs had risen again by then.

{¶37} Regarding the marginal cost of the insurance, Mother is correct that Father testified that the $450 was the amount he pays for all three of them. We note, however, that because the parties' combine gross income exceeded $150,000, the trial court had to determine the support obligation "on a case-by-case basis" considering "the needs and the standards of living of the children * * *." R.C. 3119.04(B) (2017). The child support worksheet was relevant only to the extent that the trial court could not order support less than the amount that would be computed for a combine income of $150,000, unless the amount would have been unjust, inappropriate, or not in the best interest of the children. *Id*. The trial court's support order is substantially in excess of the amount for a combined income of $150,000. Upon review of the record, Mother has not demonstrated that the amount of the child support award was, in fact, different because the trial court included Father's entire health insurance costs instead of just his marginal cost for the girls when it completed the child support worksheet. We, therefore, conclude that any error by the trial court regarding Father's health insurance expenses was harmless. Civ.R. 61. Mother's second assignment of error is overruled.

### MOTHER'S ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION AS TO ITS RULING CONCERNING THE CHILDREN'S CLOTHING.

{¶38} In her third assignment of error, Mother argues that the trial court erred when it ordered for the transfer of clothing to cease and for the children to wear whatever they are wearing

at the time they change households at the subsequent exchange back to the original household. Mother argues that the court should have terminated the exchange of clothing altogether. Mother also argues that the girls will be embarrassed to have to wear the same clothing again after only a few days, which makes the court's order unreasonable.

{¶39} According to Mother, the judgment entry contradicts itself in that it orders the transfer of clothing to cease but also orders the parties to wash the clothing that the children are wearing at the time of a transfer and send the child back in the same clothing. This Court does not agree. Despite what the shared parenting plan may have directed, the record indicates that the parties had an informal approach for the exchange of clothing. For example, Mother testified that she would occasionally return a bag of the clothing that Father had purchased for the girls that had accumulated at her home. This informal arrangement did not work for Father, with him claiming that Mother had failed to return many items of clothing to him, requiring him to repeatedly purchase new clothing for the girls.

{¶40} The trial court's order attempts to eliminate the exchange of clothing as much as practical. Inevitably, clothing purchased by one parent will travel to the other parent's home when the girls' switch homes under the visitation schedule. The alternative would be for the girls to change their clothing at the time of an exchange. Although that may work if the exchange occurs at one of the parent's houses, it is less practical if the exchange has to occur in public at the conclusion of one of the girls' activities. The trial court's order limits the transfer of clothing to one outfit and guarantees that the outfit will be washed and provided back to the parent who purchased it at the time of the next exchange. Regarding any potential embarrassment to the girls, Father correctly notes that there is no evidence in the record to support Mother's allegation. In fact, there was testimony that the girls already sometimes wore the same clothes during a parenting

exchange as they had during the previous exchange. Furthermore, the girls are only required to wear the same outfit if the clothing they were wearing at the time of the previous exchange "cannot be logistically transported by the children[.]" Thus, as long as the children can bring back the clothing they had been wearing in a bag or other container, there is no need for them to wear the same attire. Upon review of the record, we conclude that the trial court did not exercise improper discretion in its exchange of clothing order. Mother's third assignment of error is overruled.

## MOTHER'S ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED AS A MATTER OF LAW BY USING THE WORD "CUSTODY" IN JUDGMENT PARAGRAPH 20.B.

{¶41} In her fourth assignment of error, Mother argues that the trial court incorrectly used the word "custody" in one instance when describing the time during which the girls are in Father's care. According to Mother, because she is the sole residential parent, the court's use of the word custody in relation to Father is inaccurate and could result in confusion. Father concedes that the court could have made a better choice of words but contends that any error is harmless.

{¶42} The trial court's judgment clearly designates Mother as the girls' residential parent and legal custodian, and the sole decision-maker over educational and medical matters. The provision identified by Mother concerns when the parents have the right to call the girls while they are with the other parent. It provides that a parent has the right to contact the girls "while in the other party's care and custody * * *." As used in that paragraph, this Court concludes that the trial court was using the word "custody" in its ordinary sense in that he has immediate charge and control over the girls while they are at his home. Mother's fourth assignment of error is overruled.

## MOTHER'S ASSIGNMENT OF ERROR V

THE TRIAL COURT ABUSED ITS DISCRETION IN REQUIRING THE PARTIES' CHILDREN TO PARTICIPATE IN EXTRACURRICULAR ACTIVITIES RATHER THAN STUDY FOR TESTS OR DO HOMEWORK.

{¶43} In her fifth assignment of error, Mother argues that the trial court abused its discretion because the judgment prioritizes the girls' extracurricular activities over schoolwork. She notes that the judgment directs that the girls shall participate in dance and softball and that the parties ensure that the girls attend such activities. She argues that as the girls get older they will have more difficult and time-consuming homework requirements, which should take precedence over those activities.

{¶44} The shared parenting plan allowed each parent to select a team sport for the children. Father selected softball, which the girls enjoy playing. The testimony established that Mother regularly interfered with their participation in softball, however, scheduling ice skating lessons or tutoring sessions for the same time and giving those activities priority. Mother's failure to bring the older daughter to softball practices led to her missing out on participating in a special all-star league and in off-season conditioning sessions. The judgment attempts to safeguard that Mother will not disrupt Father's chosen activities for the girls. Upon review of the record, we conclude that the court did not exercise improper discretion when it ordered the parties to ensure that the girls attend softball and ice-skating. Mother's fifth assignment of error is overruled.

## MOTHER'S ASSIGNMENT OF ERROR VI

THE TRIAL COURT ABUSED ITS DISCRETION IN STRAIGHTJACKETING
WHAT THE CHILDREN "SHALL" DO.

{¶45} In her sixth assignment of error, Mother argues that the judgment incorrectly requires the girls to continue participating in activities even after they lose interest in them. According to Mother, the older child no longer has interest in ice skating and would like to do art instead. Both children have also told her that they do not want to play softball in the future.

**{¶46}** Mother's allegations are not supported by the record. According to the magistrate, both children indicated that they enjoyed ice skating and softball and wanted to continue with both. The order also does not prohibit the girls from beginning new activities such as art lessons. Upon review of the record, we conclude that Mother has not established that the trial court exercised improper discretion when it ordered the girls to continue participating in ice skating and softball. Mother's sixth assignment of error is overruled.

III.

**{¶47}** Father's assignments of error are overruled. Mother's assignments of error are also overruled. The judgment of the Mahoning County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

----

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Mahoning, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to both parties equally.

JULIE A. SCHAFER, J.
THOMAS A. TEODOSIO, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

KATHLEEN BARTLETT, Attorney at Law, for Appellant/Cross-Appellee.

LOUIS KATZ, Attorney at Law, for Appellee/Cross-Appellant.

MATTHEW GIANNINI, Attorney at Law, for Appellee/Cross-Appellant.