[Cite as *Hodkinson v. Hodkinson*, 2025-Ohio-202.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## HARRISON COUNTY

BENJAMIN T. HODKINSON,

Plaintiff-Appellee,

v.

MACKENZIE B. HODKINSON,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 HA 0007**

---

Civil Appeal from the
Court of Common Pleas, Domestic Relations Division, of Harrison County, Ohio
Case No. DRA 2021-0019

**BEFORE:**
Katelyn Dickey, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Paul Hervey,* for Plaintiff-Appellee and

*Atty. Francesca T. Carinci*, for Defendant-Appellant.

Dated: January 21, 2025

**DICKEY, J.**

{¶1} Appellant, M.H. ("Mother") appeals the judgment entry of the Harrison County Court of Common Pleas, Domestic Relations Division, granting the motion to terminate the shared parenting plan filed by Appellee, B.H. ("Father"), and designating Father the residential and custodial parent of their daughters, A.H. (d.o.b. 4/16/19) and E.H. (d.o.b. 12/28/20) (collectively "children"). Because the domestic relations court applied the proper legal standard and its merits decision turns largely on the credibility of the witness who testified at the hearing, the judgment entry is affirmed.

## FACTS AND PROCEDURAL HISTORY

{¶2} Father was diagnosed with schizophrenia in 2016. Father was a public-school teacher until his mental disorder prematurely ended his teaching career. He currently operates a self-owned landscaping business from April to November and performs side work during the winter months. Mother is a part-time health-care aide.

{¶3} Father conceded he told Mother that he suffered from anxiety and depression, rather than schizophrenia, when they began dating in 2018, because his mental health was stable. The couple married and had two children, who are the subject of this appeal, before separating and ultimately divorcing.

{¶4} During the divorce proceedings, Mother accused Father of being mentally unstable and incapable of caring for the children without assistance. She alleged the children would be in danger in Father's care, should he unilaterally discontinue his medication. The Guardian Ad Litem ("GAL") recommended Mother be named residential and custodial parent and Father have unsupervised visitation with the children on the weekends, as the GAL did not believe he presented a danger to his children.

{¶5} In the Decree of Divorce issued on December 8, 2021 ("divorce decree"), the domestic relations court found a shared parenting plan was in the best interest of the children. Child support was awarded to Mother in the amount of $435.50 per month, plus cash medical support of $40.22 per month plus processing fees. Mother was named the primary residential parent for general and school purposes, and Father was named the second residential parent.

**{¶6}** The domestic relations court adopted the terms stated in Father's proposed shared parenting plan, with some amendments that are not relevant to this appeal. Under the caption, "School," Father's plan reads in relevant part, "Mother shall be the residential parent for school purposes as long as she remains in Harrison County. Should Mother move out of Harrison County, Father shall be the residential parent." The provision continues, "[n]either party shall 'open enroll', 'homeschool', or send the children to private school without the consent of the other."

**{¶7}** Visitation was ordered in the divorce decree on a "2-2-5-5" schedule. As a consequence, the children "reside with one parent for the first two days then [the] next parent for two days[,] then the first parent for five days[,] then [the] second parent for five days."

**{¶8}** On October 11, 2022, less than one year following the issuance of the divorce decree, Mother filed a motion for an ex parte order granting her immediate and temporary custody of both children, as well as a motion for reallocation of parental rights. The motions were predicated upon the allegation that A.H. had been sexually assaulted on separate occasions by T.H., her paternal grandfather, and her paternal cousins (then ages 8 and 9) ("boy cousins"). That same day, the domestic relations court issued a judgment entry prohibiting contact between the children and T.H., and the children and the boy cousins, until further order of the court. A hearing was scheduled on October 27, 2022.

**{¶9}** On October 17, 2022, Father filed a response to the pending motions as well as a motion to terminate the shared parenting plan and for legal custody, to reappoint the GAL, and for temporary orders. Father denied the abuse allegations, characterizing them as Mother's effort to alienate the children from Father and his relatives. With respect to the allegations against the boy cousins, Father explained the children are supervised at all times when in his care.

**{¶10}** A.H.'s first disclosure was reported to Harrison County Department of Job and Family Services ("Harrison County DJFS"). Separate investigations were conducted by Harrison County DJFS, the Dover Police Department, and the Harrison County Sheriff's Department. Dover Police Department reported no evidence had been found substantiating the accusations against the boy cousins. Harrison County Sheriff's

Department likewise found no evidence substantiating the allegation against T.H. Harrison County DJFS was similarly unable to substantiate the allegations against the paternal relatives. A subsequent disclosure by A.H. was reported to Harrison County DJFS but no case was opened due to the similarity of the accusations to the prior claim. As the claims were unsubstantiated, the GAL recommended no limitation on the children's time with T.H. and the boy cousins.

{¶11} Father alleged throughout the pretrial process that Mother denied his companionship with the children in violation of the parenting time guidelines. Mother conceded she denied Father's visitation, but only when the children were ill. Mother reasoned that sick children should be with their mother.

{¶12} A trial on the cross-motions was scheduled for February 6, 2023, at which time the parties agreed to withdraw all pending motions. The domestic relations court vacated all temporary orders and reinstated the shared parenting agreement. Nonetheless, paternal relatives began filming every contact with the children, including visitation exchanges, for fear of new allegations of misconduct. L.H., paternal grandmother, testified T.H. chooses not to be alone with the children as a consequence of the previous accusations.

{¶13} On August 1, 2023, an altercation occurred when Mother and A.J., the children's maternal grandfather, brought the children to Father's home for Father's visitation. It is important to note the domestic relations court and the parties use the term "visitation" interchangeably with the term "parenting time." Prior to the day of the altercation, Father noticed a bumper sticker on A.J.'s truck that read, "shoot your local pedophile."

{¶14} During the exchange on August 1, 2023, A.H. told Father that "[Mother] has told [A.H.] that [T.H.] is not allowed to touch [A.H.'s] pootie and if he does [A.H. is] supposed to kick [T.H.]." Father testified A.H. made the foregoing statement numerous times. Father asked Mother if she heard A.H., which prompted A.H. to repeat the statement. According to Father, A.J. exited the vehicle and said to Father, "I've been waiting to do this for a long time. I got a big issue with you." (6/28/24 Hearing Tr., p. 203-204.) A verbal altercation occurred between A.J. and Father.

{¶15} According to L.H., E.H. was in L.H.'s arms. Mother told L.H. to take the children into Father's residence, but L.H. told Mother to leave the premises. When the altercation between A.J. and Father escalated to a physical confrontation, Mother brought the children into Father's residence.

{¶16} Mother exited Father's residence then returned, but L.H. stood in the doorway to prevent Mother from reentering the residence, as Mother indicated she was going to take the children back to her house. L.H. testified she would not permit Mother to reenter the house because it was Father's visitation time. In response, Mother attempted to push her way into Father's residence. Mother and A.J. ultimately departed from the driveway, at which time A.J. shouted "[y]ou better watch your back" to Father.

{¶17} Mother was charged with trespassing. After the altercation, visitation exchanges were conducted at the local police department.

{¶18} On October 23, 2023, roughly three months after the altercation in Father's driveway, Father filed the motions to terminate the shared parenting plan and for legal custody, currently before us on appeal. The motions were predicated upon Mother's ongoing and unsubstantiated accusations of sexual abuse of the children by paternal relatives. Father writes in his motion, "[d]espite reviews by law enforcement, medical personnel, and social workers that find all of the claims to be unsubstantiated, Mother continues to press her 'alternate reality' on the children and to others."

{¶19} On April 11, 2024, Mother filed a Notice of Change of Address providing a new address of 214 N. Main Street, Tuscarawas, Ohio 44682. A.J. is a former police officer in Uhrichsville. After moving to Tuscawaras, Mother requested the visitation exchanges occur in Uhrichsville. Father's counsel cited Mother's departure from Harrison County as a violation of the shared parenting agreement.

{¶20} At the hearing on the motions held on June 10 and 28, 2024, the GAL testified the sexual abuse allegations were investigated by Harrison County DJFS, the Dover Police Department, the Harrison County Sheriff's Department, as well as Stark County, after Mother moved the children outside of Harrison County as a consequence of the results of the other sexual abuse investigations. Mother requested the out-of-county investigation in Stark County based on her belief that paternal relatives had "connections" in Harrison County, who acted in concert to discredit A.H.'s sexual abuse

allegations. However, the Stark County authorities likewise found no evidence substantiating the allegations, then recommended charges be filed against Mother based on her unwillingness to accept the findings of the previous three state agencies.

**{¶21}** Mother was ultimately charged with falsifying reports of child abuse as a consequence of the Stark County investigation. The record does not contain the disposition of the charges, however, Appellant writes in her appellate brief that the charges were dismissed. The GAL declined to characterize A.H.'s allegations as "coached," but she observed that A.H. used the "same language" as Mother to describe her private parts.

**{¶22}** J.B., the children's aunt and the mother of the boy cousins, testified she was interviewed by a detective from the Dover Police Department regarding the allegations against her sons. J.B. further testified she received correspondence that the case had been closed as the accusations were unsubstantiated.

**{¶23}** At the hearing, Father's counsel asked Mother if she believes the original Harrison County DJFS investigation "established that E.H. [was] being digitally penetrated and stimulated by other children while in [Father's] care." (6/10/24 Hearing Tr., p. 77-78.) The foregoing assertion was first advanced by Mother in the 2022 motion that was voluntarily withdrawn. Based on the 2022 accusations, it appears the transcript mistakenly refers to E.H. instead of A.H., who was the subject of the 2022 investigations. Mother responded, "Yes, I do. Yes." (*Id.*) Mother further stated she believes all three of the accused paternal relatives had also sexually abused E.H. Mother testified the Harrison County DJFS investigation and the investigations performed by the other three agencies did not change her opinion.

**{¶24}** Mother was asked, "[a]nd you will continue to insist these children have been sexually abused and need to be treated for it, correct?" Mother responded, "[a]s long as that's what they tell me, yes, correct." (*Id.* at p. 79.) When Mother was asked the last time a sexual assault occurred, she responded, "I'm not sure but there is clearly a pattern both with (inaudible) medically. It stops, starts again." When asked if the children had been molested in 2024, Mother responded, "[p]ossibly." (*Id.* at p. 90-91.)

**{¶25}** Mother testified the various investigations were incomplete, due to the investigating authorities' failure to talk to the children and their paternal cousins. Mother

testified she trusted only one case worker, but was informed early in the investigation that the case worker was no longer assigned to the case. Mother conceded that A.H. was interviewed three times at Harmony House and once at Akron's Children's Hospital, and E.H. was not interviewed because she was too young.

{¶26} Mother also criticized the work performed by the GAL. Mother asserted the GAL failed to thoroughly investigate the family relationships, the children's medical history, and Father's medical history. Mother argued, the GAL "could've talked to [the grandparents] more seeing as how [L.H. is] pretty much with the girls more than [Father] is." (*Id.* at p. 90.) Mother testified that she wants the children to be raised by Father, not L.H.

{¶27} Mother's counsel argued Mother's belief that the alleged sexual abuse had occurred and was ongoing was not relevant, only her course of conduct was relevant, and she had not reported any alleged abuse since the 2022 accusations. He further argued the 2022 sexual assault allegations were resolved when the parties withdrew the 2022 cross-motions, and therefore, should not be considered in resolving the motion for termination of the shared parenting plan.

{¶28} Mother refused to concede any wrongdoing by herself or A.J. during the August 1, 2023 altercation. She blamed the confrontation and the physical altercation that followed exclusively on Father.

{¶29} Mother claimed she had the authorization of the domestic relations court to move to Tuscarawas, testifying it was the subject at one of the many hearings conducted in this case that had not been transcribed or memorialized in a judgment entry. Father conceded that Mother informed him of her intent to move to Tuscarawas roughly two weeks before the scheduled trial on the motion to terminate the shared parenting plan.

{¶30} Mother further testified she enrolled the children in parochial school with Father's authorization. However, Father testified he objected to their enrollment in parochial school because neither Father nor Mother is Catholic, and the tuition is expensive.

{¶31} Mother testified Father enrolled A.H. in preschool without Mother's authorization. Father explained A.H. did not participate in preschool when A.H. was with Mother. Mother countered that she "homeschooled" A.H. instead of sending her to

preschool. Father explained Mother was a part-time aide at a preschool before A.H. was born, but that Mother was not equipped to homeschool A.H. A.H.'s homeschooling and enrollment in parochial school are both violations of the shared parenting order.

{¶32} L.H. testified she and T.H. reside across the street from Father and she is a regular presence in Father's home when the children are present. L.H. denied that her assistance was a tacit acknowledgment that Father was incapable of caring for the children on his own.

{¶33} L.H. testified she does not accept telephone calls from Mother when she is babysitting the children and Father is working, because she does not want to get in the middle of the couple's arguments. However, L.H. informs Father that Mother has called, and encourages him to respond in kind.

{¶34} L.H. testified the children have displayed "a lot of mental stress" since the separation, particularly following visitation exchanges. According to L.H., "the first probably twenty minutes after [Father and L.H. retrieve the children] they have to talk through things and try to process things that maybe have been said since [Father and L.H.] saw [the children]." (*Id.* at p. 144.) During the drive following the most recent exchange, the children commented on "how long of a drive it was from Tusky to Cadiz and was it possible that [Father and L.H.] could pick up [sic] somewhere else," and "[c]an [Mother] and [Father] sit together at the softball games." (*Id.* at p. 145.).

{¶35} Father agreed the children are "confused" and full of questions when his visitation begins. He believes Mother enlists the children to act as de facto spokespersons and romantic intermediaries in an effort to reunite Mother and Father.

{¶36} L.H. testified the children's relationship with T.H. has been permanently altered by the allegations. T.H. is never alone with the children. He joins L.H. and the children for lunch when L.H. babysits but departs at the conclusion of the meal.

{¶37} Father testified the children never articulated any accusations of sexual abuse that were not premised with "[Mother] told me" or "[maternal grandmother] told me this." (*Id.* at p. 191.) He further testified Harrison County DJFS instructed the family to remain vigilant of the children, but to stop talking about the unsubstantiated sexual abuse after the conclusion of the investigation.

Case No. 24 HA 0007

**{¶38}** Father argued the shared parenting plan should be terminated because Mother had violated the agreement with respect to the children's schooling and had scheduled numerous unwarranted medical appointments for them. Father asserted the decision-making process with respect to the children should have "some type of conscientious balance to it." (*Id.* at p. 211.) Finally, Father argued Mother's visitation should be supervised to end the ongoing mental stress the children suffer as a consequence of Mother's refusal to accept the findings of the state agencies regarding the sexual abuse allegations.

**{¶39}** The GAL observed that "throughout [her] involvement [Mother] has always been a little overprotective of the children to the point of not allowing [Father] some of his parenting time." (Trial Tr., p. 22.) According to the GAL, Mother conceded she withholds visitation from Father when one or both of the children is ill. The GAL testified there was a pattern of Mother denying visitation to Father based on the illness of one or both of the children. (*Id.* at p. 60.)

**{¶40}** The GAL observed Father "would certainly follow the court orders [regarding visitation] a little bit closer." (*Id.*) She further observed, "I know during the pendency of this case [Mother] has moved out of the county. I believe in terms of their shared parenting she's not [allowed] to do that." (*Id.*)

**{¶41}** A psychological evaluation of Father was filed with the domestic relations court. A summary of a psychological evaluation of Mother was provided in the GAL's final report. Both documents are marked "confidential." It is important to note that we gave due consideration to both pleadings but the contents are not summarized here in order to maintain confidentiality.

**{¶42}** In the judgment entry on appeal, the domestic relations court granted Father's motion to terminate the shared parenting plan, based on the best interests of the children, and named Father the residential and custodial parent of the children. The custody award was predicated upon Father's continued participation in mental health counseling and his compliance with his prescribed medication schedule. The judgment entry reads that any departure by Father from his counseling and medication regimen is "grounds for change in circumstances immediately." (7/19/24 J.E., p. 3.)

Case No. 24 HA 0007

{¶43} The domestic relations court recognized both Mother and Father have "substantial mental health issues that need addressed and both parties should follow the advice and treatment of their respective medical providers." The domestic relations court opined Father's schizophrenia is his overall outstanding issue, while Mother's overall outstanding issue is her "persistent allegations of sexual abuse against [the children] by [T.H.] and paternal cousins," despite multiple investigations that have not substantiated the allegations. (*Id.* at p. 2)

{¶44} The domestic relations court wrote that it had considered all of the factors under R.C. 3109.04(F)(1), citing R.C. 3109(F)(1)(e), regarding both parents' mental health problems, and R.C. 3109.04(F)(1)(i), regarding Mother's repeated denials of Father's visitation and "making unilateral decisions on the same without consultation with [Father.]" (*Id.*)

{¶45} Despite the termination of the shared parenting plan and the designation of Father as the decision-maker regarding the children's health and education, there was no change in the visitation schedule and the child support order remained in force. The Dennison Police Department was the designated visitation exchange location.

{¶46} This timely appeal followed. The assignments of error are taken out of order for ease of analysis.

## ASSIGNMENT OF ERROR NO. 2

**THE COURT ERRED IN APPLYING THE WRONG STANDARD IN TERMINATING THE SHARED PARENTING PLAN.**

{¶47} In her second assignment of error, Mother argues the domestic relations court failed to apply the proper legal standard when it terminated the shared parenting plan, and designated Father the residential and custodial parent of the children. Mother contends the domestic relations court was required to find a change of circumstances occurred in order to terminate the shared parenting plan.

{¶48} R.C. 3109.04(E)(2)(c) provides, "[t]he court may terminate a prior final shared parenting decree that includes a shared parenting plan . . . upon the request of one or both of the parents or whenever it determines that shared parenting is not in the

best interest of the children." As a consequence, the Ohio Supreme Court has held that in order to terminate a shared parenting plan, a trial court is not required to find a change in circumstances, but need only consider the best interest of the child before terminating a shared-parenting plan and decree and designating one parent as the residential parent and legal custodian. *Bruns v. Green*, 2020-Ohio-4787, ¶ 21.

{¶49} In Ohio, a domestic relations court need not show a change of circumstances when terminating a shared parenting plan. Because the domestic relations court applied the best interest test in terminating the shared parenting plan, we find Appellant's second assignment of error is meritless.

## ASSIGNMENT OF ERROR NO. 1

**THE COURT ERRED IN TERMINATING THE SHARED PARENTING PLAN AND DESIGNATING [FATHER] AS THE RESIDENTIAL PARENT AS THE EVIDENCE DID NOT SUPPORT THE COURT'S FINDINGS AND DECISION.**

{¶50} An appellate court reviews custody and parenting time issues for an abuse of discretion. *Davis v. Flickinger*, 77 Ohio St.3d 415, 421 (1997). A court's determination regarding child custody matters that is supported by competent and credible evidence will not be reversed absent an abuse of discretion. *Bechtol v. Bechtol*, 49 Ohio St.3d 21 (1990), syllabus. Abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶51} "In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in [Section 3109.04(F)(1)], the factors enumerated in section 3119.23 of the Revised Code," and all of the factors listed in Section 3019.04(F)(2). R.C. 3109.04(F)(2); *Hise v. Laiviera*, 2018-Ohio-5399, ¶ 53 (7th Dist.).

{¶52} The best interest factors in Section 3109.04(F)(1) include: (a) the parents' wishes; (b) the wishes and concerns of the child if the court interviewed the child in chambers; (c) the child's interaction and interrelationship with parents, siblings, and any other person who may significantly affect the child's best interest; (d) the child's

adjustment to the home, school, and community; (e) the mental and physical health of all involved; (f) the parent more likely to honor and facilitate court-approved parenting time; (g) any parent's failure to make all court-ordered child support payments, including arrearages; (h) whether a parent or a household member has been convicted of certain criminal offenses, a parent was found to be the perpetrator in an adjudication of an abused or neglected child, or there is reason to believe a parent acted in a manner resulting in a child being an abused or neglected child; (i) whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court; and (j) whether either parent established, or is planning to establish, a residence outside of this state.

**{¶53}** The additional factors in Section 3109.04(F)(2) include: (a) the ability to cooperate and make decisions with respect to the child jointly; (b) the ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent; (c) any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent; (d) the geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting; and (e) the guardian ad litem's recommendation (if one was appointed). R.C. 3109.04(F)(2). The factors in Section 3119.23 primarily concern the financial resources of the parties and children and their standard of living, but also any "[s]pecial and unusual needs of the child or children, including needs arising from the physical or psychological condition of the child or children[.]" *Facemyer v. Facemyer*, 2021-Ohio-48, ¶ 7 (7th Dist.), citing R.C. 3119.23, R.C. 3119.23(A).

**{¶54}** Mother argues her concerns regarding sexual assault of the children by paternal relatives are legitimate, and her only fault is being overly-protective (as described by the GAL) of the children. Mother further argues the sexual assault allegations did not inculpate Father as an abuser, and "[m]aking allegations against [Father's] family members in no way lessens [Father's] relationship with the children." (Appellant's Brf., p. 3.) Next, Mother contends the domestic relations court predicated the termination of the shared parenting order on Mother's violation of the shared parenting plan, however there had been no prior orders regarding Mother's alleged denial of visitation and she was not

held in contempt for relocating the children. Finally, Mother asserts Father's mental illness is debilitating at times and he should not be entrusted with decision-making for the children.

**{¶55}** Mother's argument that her persistent belief that the children are being sexually assaulted by paternal relatives "in no way lessens [Father's] relationship with the children," and is simply evidence of her being overprotective, underscores the GAL's opinion that Mother's influence is harmful to the children. While it is true that "unsubstantiated allegations" do not equate with "false allegations," Mother's observations at the trial, that A.H.'s sexual abuse is ongoing and E.H. has likewise been the victim of abuse by paternal relatives, belie her trial counsel's argument that her actions in not pursuing additional investigations are relevant, but her belief in the allegations is not. Mother has not initiated another sexual abuse investigation, likely because her last effort resulted in criminal charges against her. However, testimony at the hearing established that Mother has not relented in her interactions with the children regarding alleged sexual abuse. R.C. 3109.04(F)(1)(c). Further, we find the mental health of the children is better served if the shared parenting plan is terminated and Father is the residential and custodial parent. R.C. 3109.04(F)(1)(e).

**{¶56}** Next, Mother argues the domestic relations court's reliance on her refusal to follow the visitation guidelines in the shared parenting plan are not grounds for its termination. While it is true that Father never raised the issue before the domestic relations court, the record reflects that Mother has consistently denied visitation to Father because one or both of the children are ill, despite the fact that Mother and Father have equal parenting time. Accordingly, we find the trial court did not abuse its discretion in finding Mother has continuously and willfully denied Father parenting time in violation of the shared parenting plan. R.C. 3109.04(F)(1)(i).

**{¶57}** Mother's most compelling argument is predicated upon Father's unwillingness to accept his schizophrenia diagnosis. However, both the domestic relations court and the GAL found Father is better suited to make decisions for the children, as long as he continues his medication and therapy regimen. Insofar as the domestic relations court's decision turns on the credibility of the parties, we defer to the domestic relations court on the issue. Deferential review in a child custody determination

Case No. 24 HA 0007

is especially crucial "where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis, supra,* at 419. Moreover, the domestic relations court concluded Father is more likely to honor and facilitate court-approved parenting time. R.C. 3109.04(F)(1)(f).

{¶58} "[C]ustody issues are some of the most difficult and agonizing decisions a trial judge must make. Therefore, a domestic relations court must have wide latitude in considering all the evidence . . . ." *Davis* at 418. The domestic relations court heard and saw the parties as they spoke and judged their credibility, sincerity, and attitude, which is the trial court's primary function and prerogative. *Id.* at 418-419. Having reviewed the record, we find the domestic relations court decision was supported by competent, credible evidence, and therefore, the domestic relations court did not abuse its discretion in terminating the shared parenting plan and designating Father the residential and custodial parent. Accordingly, we find Appellant's first assignment of error is meritless.

## CONCLUSION

{¶59} For the foregoing reasons, the judgment entry of the domestic relations court terminating the shared parenting plan and designating Father the residential and custodial parent of the children is affirmed.

Waite, J., concurs.

Robb, P.J., concurs.

Case No. 24 HA 0007

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Domestic Relations Division, of Harrison County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**